# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

NICHOLAS LECLAIR, *individually and*
*as parent and natural guardian of* "I.L." and
"S.L", *his children,*

                                    Plaintiff,

              - v -                                      Civ. No. 1:19-CV-28
                                                              (BKS/DJS)
JESSICA VINSON, *et al.*,

                                    Defendants.


**APPEARANCES:**                              **OF COUNSEL:**

NICHOLAS LECLAIR
Plaintiff, *Pro Se*
P.O. Box 300
Chestertown, NY 12817

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT RECOMMENDATION and ORDER

        The Clerk has sent to the Court a Complaint filed by *pro se* Plaintiff Nicholas LeClair

on behalf of himself and this two children, designated as "I.L." and "S.L." Dkt. No. 1,

Compl.[1]  On Feburary 4, 2019 Plaintiff filed an Amended Complaint as of right, which is

now the operative pleading and is therefore the subject of this Court's review.  Dkt. No. 4.,

Am. Compl.  Plaintiff has not paid the filing fee, but has submitted a Motion to Proceed *In*

---

[1] For ease of reference, the Court will refer to Mr. LeClair as "Plaintiff" and his children by their initials as Plaintiff does in his Amended Complaint, although the children are currently listed as plaintiffs.

*Forma Pauperis*.  Dkt. No. 2.[2]

The present Amended Complaint, submitted by a *pro se* litigant, is over 200 typed

pages, and covers conduct in Vermont, New Hampshire, and New York.  *See generally* Am.

Compl.  Plaintiff Nicholas LeClair seeks to bring a civil rights action on behalf of himself

and his two children regarding conduct of members of the Warren County Department of

Social Services, the Warren County Family Court, and a private attorney appointed by the

Court, which conduct is said to have prevented the reunification of Plaintiff and his children

by creating a "prejudicial" Family Court Record and by covering up alleged misconduct of

the maternal grandmother, who at one point in time had physical custody of the two children,

and her son.  *See* Am. Compl.

## I.  INTRODUCTION

### A. Factual Statement

Briefly stated, the Amended Complaint alleges that Plaintiff is married to Emily

Whipple and they are the parents of two children, I.L. and S.L., who at the times relevant,

were between the ages of one and three.  Am. Compl. at ¶ 3.  While living in New

Hampshire, Plaintiff and his wife were arrested and their children were placed in protective

custody.  *Id.* at ¶ 25.  Plaintiff and his wife were thereafter released on their own

recognizance after a weekend in custody.  *Id*. at ¶ 31.  Plaintiff and his family relocated to

Warren County, and at one point moved in with Lacey Ferguson and her son Jacob in

---

[2] By separate Order, the Court has granted Plaintiff's IFP application.  Dkt. No. 6.

Chestertown, New York. *Id.* at ¶ 33. Lacey Ferguson is Ms. Whipple's mother and the grandmother of Plaintiff's children. *Id.* What then follows in the Amended Complaint is a lengthy saga involving numerous members of Warren County Child Protective Services ("CPS"), the Warren County Family Court and its staff, and various attorneys, regarding the grandmother's attempt to obtain custody of I.L. and S.L., and Plaintiff's attempt to prevent that and regain custody of his children. *Id.* at ¶ 32.

## B. Family Court Record

This Court's review of the Family Court's orders discloses as follows: First, on March 14, 2018 Judge Ted Wilson issued a temporary order on consent giving the grandmother sole legal and physical custody of the minor children. Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, Mar. 14, 2018 (available on file at Warren County Family Court). Next, on May 7, 2018, the Family Court modified the prior ruling and issued a second temporary order of custody, giving the grandmother and the children's parents joint legal custody, with the grandmother having primary physical custody. Second Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, May 7, 2018 (available on file at Warren County Family Court). A third temporary order of custody was issued on May 29, 2018, which continued joint legal custody to the parents and the grandmother, but modified the conditions of visitation of the mother and father. Third Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, May 29, 2018 (available on file at Warren County Family Court). A fourth order was issued on June 12, 2018, which modified conditions of visitation, but maintained primary physical custody of the children with the

grandmother. Fourth Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, July 12, 2018 (available on file at Warren County Family Court). A fifth order was issued on August 7, 2018, at which time legal and physical custody of the children was awarded to the parents, with visitation provided to the grandmother. Fifth Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, Aug. 7, 2018 (available on file at Warren County Family Court). Finally, on October 9, 2018, the Family Court issued the final order of custody which provided for legal and physical custody of the children to Plaintiff and his wife, and changed the grandmother's visitation schedule. Final Order of Custody and Visitation, *Ferguson v. Whipple*, File No. 11964, Oct. 9, 2018 (available on file at Warren County Family Court). An Appeal was filed by Mr. LeClair, but that Appeal was dismissed by the Appellate Division, Third Judicial Department.[3]

## C. Allegations and Claims

The following is a summary of the named Defendants to the action and the conduct for which they are thought to be liable for damages:

1. **Jessica Vinson.** Ms. Vinson is a private attorney who was appointed by the Family Court as the Law Guardian for Mr. LeClair's two minor children. Am. Compl. at ¶¶ 7, 45. It is claimed that she violated her professional responsibility by supporting the custody claim of the grandmother and not that

---

[3] The Court takes judicial notice of the Family Court orders. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 103 (N.D.N.Y. 2013) (taking judicial notice of custody order of the Family Court); *Villanueva v. City of New York*, 2010 WL 1654162, at *5 (S.D.N.Y. Apr. 14, 2010) ("[W]e consider the court orders and hearing transcripts from the underlying Family Court proceedings. . . .").

of the mother and father. *E.g.*, *id.* Plaintiff alleges that Ms. Vinson's improper representation of the two children denied Plaintiff due process. *Id.*

2. **Sarah Raymond**. Ms. Raymond is a social worker for the Warren County Office of Child Protective Services. *Id.* at ¶ 4. She was involved in investigating the condition of the children; providing information to the Family Court; and making motions to the Family Court with regard to the custodial status of Plaintiff's two children. *Id.* She also investigated a claim that Ms. Ferguson and her son physically abused one of Plaintiff's children. *E.g.*, *id.* at ¶ 382. That claim was ultimately determined to be unfounded. *Id.* at ¶ 400. Plaintiff objects to Ms. Raymond's allegedly improper investigation, including suggestive questioning and entering Plaintiff's residence uninvited, as well as her advocation for separation of the children from the parents. *E.g., id.* at ¶ 451.

3. **Danielle Colon**. Ms. Colon is a social worker employed by Warren County and is employed in the Foster Care Unit of Child Protective Services. *Id.* at ¶ 6. She is said to have not properly investigated the claim of abuse against I.L. *Id.* at ¶¶ 353-379. She is also alleged to have fabricated evidence and falsified reports in the Family Court proceeding. *E.g.*, *id.* at ¶¶ 458, 469.

4. **John Lord and Tammy Breen**. Mr. Lord and Ms. Breen are said to be supervisors employed by Warren County in the Child Protective Unit. They are alleged to have created a policy of concealing the alleged abuse by the

grandmother and her son, while simultaneously using coerced and fabricated reports to implicate Mr. LeClair, thereby negatively affecting the outcome of his Family Court proceeding. *Id*. at ¶¶ 5, 8, 447.

5.   **Katherine Thompson**.  Ms. Thompson is the Chief Court Clerk for the Warren County Family Court. *Id.* at ¶ 11.  In the Amended Complaint it is alleged that, among other things, she would not accept *ex parte* motions prepared by Mr. LeClair during a time when he was represented by appointed counsel.  She also allegedly discouraged him from attempting to represent himself. *E.g., id.* at ¶¶ 423-30.

6.   **Garfield Raymond**.  Mr. Raymond is a law clerk to the Hon. Ted Wilson, Family Court Judge for Warren County. *Id*. at ¶ 12. Mr. Raymond is said to be responsible for, and "controlled," the record in the Family Court, and for not allowing Plaintiff to file his own motions in the Family Court proceeding when he was represented by an attorney. *Id*. at ¶¶ 268-270, 430.

7.   **Terra Cahill and Whitney Hoerter**.   Ms. Cahill and Ms. Hoerter are employed as Social Workers by Warren County in the Child Protective Service Unit. *Id.* at ¶¶ 9, 10.  Ms. Hoerter is said to have put false information into a service plan; acted as "muscle" to coerce Plaintiff and his wife into accepting further services; and suppressed evidence of abuse and presented false evidence in the Family Court proceeding. *Id.* at ¶¶ 10, 153, 323, 458.  Defendant Cahill is said to have improperly conducted an abuse investigation; refused to accept

evidence of injury to Plaintiff's child; failed to timely interview that child; and presented false evidence to the Family Court. *Id.* at ¶¶ 9, 199, 355, 367, 455, 458.

8.    **Warren County**.  Warren County is said to be a governmental entity, and the employer of all the other Defendants. *Id.* at ¶¶ 4-13.

The Amended Complaint seeks to assert five causes of action:

Count One of the Amended Complaint is brought against Defendants Breen, Lord, S. Raymond, Colon, Vinson, G. Raymond, Thompson, Hoerter, and Cahill; it alleges a due process violation premised upon the Defendants presenting false evidence against Mr. LeClair, while simultaneously being negligent in their investigation of Lacey and Jacob Ferguson for their alleged abuse of Plaintiff's children. *Id.* at ¶ 456.  According to Plaintiff, this resulted in a prejudicial record before the Family Court, and therefore denied Plaintiff an equal right to justice. *Id*. at ¶ 458.  Plaintiff further claims that he, his wife, and his children were not properly represented by counsel at the Family Court proceeding. *Id.* at ¶ 463.

Count Two is a section 1983 claim based upon intentional infliction of emotional distress. *Id.* at ¶¶ 476-479.  That claim is also against Defendants Breen, Lord, S. Raymond, Colon, Vinson, G. Raymond, Thompson, Hoerter, and Cahill.

Count Three is a section 1983 claim for abuse of civil process against Defendants Breen, Lord, S. Raymond, Colon, Vinson, G. Raymond, Thompson, Hoerter, and Cahill. *Id.* at ¶¶ 480-485.

Count Four is a claim against Defendants Vinson and Sarah Raymond for alleged

violations of the Fourteenth Amendment right of family association, as well as a Fourth Amendment violation for an alleged illegal search, seizure, and detention. *Id.* at ¶¶ 486-494.

Finally, the Fifth Count of the Amended Complaint is against Defendants Sarah Raymond and Terra Cahill for an alleged coercive interview. *Id.* at ¶¶ 495-499.

## II. DISCUSSION

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991)). However, where the grounds for dismissal offer no

basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015).

### A. Claims on Behalf of the Children

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007); *see also* 28 U.S.C. § 1654. Moreover, under the "prudential standing rule" litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014). While adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child" because "[t]he choice to appear *pro se* is not a true choice for minors who under state law, cannot determine their own legal actions.") (citing FED. R. CIV. P. 17(b)). Thus, in this case the children may not be plaintiffs on their own because they are minors, and the father, Nicholas LeClair, may not represent his children. *See also Armatas v. Maroulleti*, 484 Fed. Appx. 576 (2d Cir. 2012) (summary order). It follows that the Plaintiff's Amended Complaint, insofar as it seeks to assert claims on behalf of his two minor children, should be **dismissed**. *Bullock v. DSS, CPS, Comm'r*, 2018 WL 1115218, at *4 (N.D.N.Y. Jan. 18, 2018), *report and recommendation adopted*, 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018). That dismissal, however, should be **without prejudice** to allow the children, when properly represented by legal counsel, to reassert these claims. I therefore recommend

*-10-*

that, should Plaintiff be afforded the opportunity to file a further amended complaint, he be provided time to retain counsel or to request counsel be appointed for his children.[4]

## B. Jurisdiction

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte*). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of Plaintiff's *pro se* status, the Court will *sua sponte* assess whether subject matter jurisdiction is present in this case. *Kruglov v. Copart of Connecticut, Inc.*, 2018 WL 1399332, at *3 (N.D.N.Y. Jan. 16, 2018), *report and recommendation adopted*, 2018 WL 1399337 (N.D.N.Y. Mar. 19, 2018).

In the present case, Plaintiff cites to violations of federal constitutional law, and seeks redress under the civil rights statute, 42 U.S.C. § 1983. The federal courts would normally have original jurisdiction under 28 U.S.C. § 1331 to hear such a case; however, because of

---

[4] There is no legal right to counsel in civil cases. However, 28 U.S.C. § 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Court cautions Plaintiff that while counsel may be appointed in appropriate circumstances, *see* FED. R. CIV. P 17(c); 28 U.S.C. § 1915(e)(1), counsel is not appointed in many cases, particularly where, as here, there is not a fully developed record from which an assessment of the merits of the case can be made. *See Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986) (stating that, in determining whether to appoint counsel, the court must first determine whether the indigent's claims are likely to be of substance, and then consider a number of factors regarding the nature of the case and the indigent's abilities).

the precise allegations of the claims, the Court must also consider three additional well established jurisdictional rules.

### 1. The Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted) (citation omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, insofar as the present *pro se* Complaint seeks to overturn a custody decision of the family court, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at *5 (N.D.N.Y. Sept. 15, 2017).

This principle, however, does not appear to be a complete bar to the present *pro se* Complaint. As noted above, the Warren County Family Court has granted Plaintiff and his

wife physical and legal custody of his two children and therefore it does not appear that the present Complaint is seeking to overturn the final custody order; rather, it seeks damages for constitutional violations based, *inter alia*, on Family Court orders that have already been changed. Such a claim does not run against the domestic relations exception. *Thomas v. New York City*, 814 F. Supp. 1139, 1147 (E.D.N.Y. 1993) ("[T]he adjudication of whether the state's procedure . . . complies with the constitutional due process requirements is squarely within this Court's federal question jurisdiction and does not entail any investigation by the federal court into the fitness of the parent to care for the child or the issuance of any decree that the parent must necessarily be reunited with the child. . . ."). For this reason, the domestic relations exception is not a total bar to Plaintiff's claims.

## 2. *The Rooker-Feldman Doctrine*

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed. Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that "seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-

*-13-*

court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Giving a generous reading to the *pro se* Plaintiff's Amended Complaint, it is not clear that the *Rooker-Feldman* doctrine applies. Indeed, in a factually similar case the Second Circuit concluded that the plaintiff did not meet "at least two of the *Rooker-Feldman* requirements: the plaintiff did not lose in state court and plaintiff does not 'invite district court review and rejection' of a state court judgment." *Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009). As in *Green*, Plaintiff LeClair has been awarded custody of his children and therefore is not seeking to overturn a Family Court ruling, nor is he technically a state court loser. Therefore, the Court does not perceive this doctrine as a basis to prevent the Amended Complaint from proceeding past initial review on jurisdictional grounds.[5]

### 3. *Younger Abstention*

In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971). The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id.* *Younger* abstention is triggered only by three categories

---

[5] Of course, nothing prevents the surviving Defendants from presenting these issues to the Court by way of a motion on a more complete record.

of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings. *Id.* at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents)); *see also Davis v. Baldwin*, 594 Fed. Appx. 49, 51 (2d Cir. 2015) (same).

While it is true that *Younger* abstention does not apply to claims for monetary damages, such as the present one, the doctrine does dictate that "a stay of the action pending resolution of the state proceeding may be appropriate." *Kirschner v. Klemons,* 225 F.3d 227, 238 (2d Cir. 2000). Based upon the present record, however, the Court believes that any issue regarding such a stay would be best left to the District Court after issue has been joined and with the benefit of fully filed briefs. Therefore, the Court does not perceive a jurisdictional basis to dismiss this entire matter upon initial review.

### C. State Action

Defendant Jessica Vinson is alleged to be a private attorney who represented Plaintiff's children in the family court proceedings. *See*, *e.g.*, Am. Compl. at ¶¶ 7, 43. Based on the allegations against her, however, she cannot be considered to be a state actor or someone whose conduct is fairly attributable to the State, an essential prerequisite to a § 1983 claim. It is well settled that conduct of private attorneys practicing in family court proceedings, even

where they are paid by the State, do not rise to the level of State action. *Koziol v. King*, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015). That rationale applies to law guardians as well. *Id.* ("More to the point, it is equally well-settled that, 'although appointed by the state, an attorney for the child[ ] or law guardian is not a state actor because [s]he . . . must exercise independent professional judgment on behalf of the clients [she] represent[s].'") (quoting *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd* 485 Fed. Appx. 500 (2d Cir. 2012)).

While it is true that private actors may be proper section 1983 defendants when they conspire with state actors, a mere conclusory allegation that a private individual acted in concert with state officials is wholly insufficient. *Ciambriello v. Cty. of Nassau*, 292 F. 3d 307, 324 (2d Cir. 2002). In the present Amended Complaint, the conclusory, vague, and general allegations of conspiracy do not state a plausible civil rights claim against attorney Vinson. Accordingly, it is recommended that the claims against Defendant Jessica Vinson be **dismissed with leave to replead** allegations satisfying the state action requirement.

### D. Absolute Judicial Immunity

Judicial Immunity is applicable to conduct taken by the court as part of its judicial power and authority, and its absolute protection extends to all judicial acts except those performed in the clear absence of all jurisdiction. *See Pierson v. Ray,* 386 U.S. 547, 554 (1967) ("This immunity applies . . . not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences."). The

Supreme Court has emphasized that the scope of a judge's jurisdiction must be construed broadly. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). The present Amended Complaint contains many allegations relating to alleged misconduct or improper decisions by Family Court Judge Ted Wilson. *See* Am. Compl. at ¶¶ 132, 162, 275. No doubt recognizing the application of absolute judicial immunity, Plaintiff does not seek to name Judge Wilson as a defendant. However, he does sue members of the Warren County Family Court staff; in particular Judge Wilson's law clerk, Garfield Raymond as well as the Chief Family Court Clerk, Katherine Thompson. However, the vast breadth of judicial immunity protects against such allegations. It extends to the court clerk, as the allegations relate to her judicial functions. *Scott v. Dixon*, 720 F.2d 1542, 1546 (11th Cir. 1983), *cert. denied*, 469 U.S. 832 (1984); *see Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity."). Judicial immunity also applies to the judicial law clerk, who is considered an extension of the judge at whose pleasure he serves. *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988). These claims Plaintiff seeks to assert are barred by absolute immunity and granting leave to amend would therefore be futile. *See Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). Accordingly, all claims against the Court Clerk Thompson and the Law Clerk G. Raymond should be **dismissed with prejudice.**

### E. Plaintiff's Claims

#### 1. Fourteenth Amendment Due Process

Plaintiff's first cause of action alleges, in part, that the Defendants presented false and fraudulent evidence during the family court proceeding. As a result, Plaintiff's familial relationship with his two children was damaged due to the interim custody orders issued by the family court providing physical custody to the children's grandmother, in violation of his due process rights protected by the Fourteenth Amendment to the United States Constitution. *See*, *e.g.*, *Kia P. v. McIntyre,* 235 F.3d 749, 758 (2d Cir. 2000) (recognizing that substantive due process can protect against government interference with the right of parents to have custody of their children). Upon review, the Court finds that this aspect of the first cause of action in the Amended Complaint alleges enough to warrant a responsive pleading. In so doing, however, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed dispositive motion.

It should be noted, however, that a separate part of the first cause of action in the Amended Complaint is centered upon the allegation that the Defendants did not timely and properly investigate a claim of abuse by the children's grandmother or her son. Am. Compl. at ¶¶ 456, 457 & 460. The failure of the Defendants to intervene and stop the alleged abuse is said to have led to further abuse of the children, and therefore violated Plaintiff's and the children's constitutional rights. *Id.* Such a theory of constitutional liability, however, has already been rejected by the United States Supreme Court in the case of *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). In the *DeShaney* case the young

child at issue, Joshua, was in the custody of his natural father. Social services received information that the child was being abused by his father but ultimately released him back to his father's custody upon the finding that there was insufficient evidence of abuse. *Id*. at 192. It turned out that the father continued to abuse the child, resulting in permanent brain damage to Joshua. *Id*. at 193. Despite these tragic facts, the Supreme Court rejected the mother's claim on behalf of the child and held that the failure of Social Services to remove Joshua from his father's custody, despite the defendants' alleged knowledge of abuse, did not constitute a violation of the due process clause because the person causing injury was a private citizen, and not a state actor. *Id*. at 202. The Court noted that there was no affirmative obligation on the part of the state to provide protective services. *Id*. at 196-97. The present Amended Complaint suffers from the same impediment insofar as it seeks to hold the Warren County Defendants liable on the theory that they should have performed a more thorough investigation into the reported abuse and intervened to stop any further alleged abuse. The Court recommends that this portion of the cause of action be **dismissed with prejudice**.

### 2. *Intentional Infliction of Emotional Distress Under 42 U.S.C. 1983*

As his second cause of action, Plaintiff has attempted to allege a section 1983 claim based upon the theory that the Defendants violated his civil rights due to their "intentional infliction of emotional distress." Am Compl. at ¶¶ 476-479. Although disfavored, New York does recognize such a claim under state common law for "extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress to another. . . . [The] conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible

*-19-*

bounds of decency." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). It is clear from the Amended Complaint that Plaintiff is not seeking to pursue such a claim under state law. Nor is there is any specific allegation that Plaintiff complied with any notice of claim requirements that would be a condition precedent to such a state law claim. Rather, what Plaintiff seeks to do, but cannot, is to graft the state law claim requirements of an IIED claim on to an action under the federal civil rights statute. Stated simply, "[t]here is no recognized claim for intentional infliction of emotional distress under section 1983." *Schisler v. City of Rome*, 2017 WL 1418296, at *4 (N.D.N.Y. Mar. 22, 2017), *report and recommendation adopted*, 2017 WL 1411533 (N.D.N.Y. Apr. 20, 2017) (quoting *Watson v. Doe*, 2016 WL 347339, at *32 (N.D.N.Y. Jan. 28, 2016)). It is therefore recommended that Plaintiff's second cause of action be **dismissed with leave to replead** as a pendent state law claim**.**

### 3. *Abuse of Process*

"[A]buse of criminal process is actionable under section 1983 as a denial of procedural due process." *Sullivan v. LaPlante*, 2005 WL 1972555, at *3 (N.D.N.Y. Aug. 16, 2005) (*citing Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). The underlying litigation in this case, however, is civil in nature. *Southerland v. Woo*, 44 F. Supp. 3d 264, 282 (E.D.N.Y. 2014), *aff'd*, 661 Fed. Appx. 94 (2d Cir. 2016). It is unclear whether an abuse of process claim relating to a family court proceeding can give rise to a cause of action under section 1983. *See, e.g.*, *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992); *Cook v. Sheldon*, 41 F.3d at 79-80.

Under either New York or federal law, "a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d at 80. Without the element of collateral purpose, no abuse of process claim is stated. *Mortimer v. City of New York*, 2018 WL 1605982, at *23 (S.D.N.Y. Mar. 29, 2018) ("[W]hile Plaintiffs attack the validity of [the Family Court] proceedings, they do not state that either was brought for a purpose other than removal of [the child] from the home."). Here, the Amended Complaint alleges in conclusory terms that the actions of the Defendants in favor of the maternal grandmother were for a collateral purpose other than in support of her request for custody, which was the purpose of the Family Court proceeding. *See* Am. Compl. at ¶ 482. Such conclusory allegations cannot suffice to satisfy the pleading requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678. Accordingly, it is recommended that Plaintiff's Third Cause of Action should be **dismissed with leave to replead**.

### 4. Fourth Amendment Violation

The fourth cause of action is limited to a claim against Defendant Sarah Raymond, alleging a violation of Plaintiff's Fourth Amendment rights based upon an alleged illegal entry into the LeClair apartment; and a separate Fourth Amendment claim against Defendant Vinson arising out of the alleged unlawful removal of Plaintiff's children from Plaintiff's care and custody. Am. Compl. at ¶¶ 486-494. The Court finds that the allegations in the Amended Complaint are sufficient to warrant a response as to the illegal entry claim. However, as to

the seizure claim involving the children, that claim cannot proceed in the present action as "Fourth Amendment rights are personal rights which . . . may not be asserted vicariously." *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2011) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent . . ."); *Graham v. City of New York*, 869 F. Supp. 2d 337, 355 (E.D.N.Y. 2012) ("[P]arents do not have their own Fourth Amendment right to be free from a child's court-approved removal."). As noted above, Plaintiff is proceeding *pro se* and therefore cannot pursue claims on behalf of his minor children. The Court therefore recommends that the Fourth Amendment claims of the children be **dismissed without prejudice** to be re-filed only when the children are properly represented.

### 5. Coercive interview

Plaintiff's final section 1983 claim is based upon allegedly coercive interviews performed by Defendants Sarah Raymond and Terra Cahill. Am. Compl. at ¶¶ 495-499. In *Cavaez v. Martinez*, the Supreme Court rejected such a claim asserted under the Fifth Amendment, because plaintiff "was never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case. Nor was he ever placed under oath and exposed to the cruel trilemma of self-accusation, perjury or contempt." 538 U.S. 760, 767 (2003) (internal quotation marks omitted) (citations omitted). The Amended Complaint likewise does not allege that any statements of Mr. LeClair were used in a criminal proceeding. Courts have, however, allowed a coercive interview claim to proceed in the

family court context under a substantive due process violation theory. Under such an analysis, defendants can be liable if they "used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Zahrey v. City of New York*, 2009 WL 54495, at *12 (S.D.N.Y. Jan. 7, 2009) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), *amended on reconsideration in part*, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009)). Such a claim is the type asserted here. However, this theory of a substantive due process violation has already been asserted in the first cause of action of the Amended Complaint, and therefore it is recommended that the fifth cause of action be **dismissed without prejudice** as duplicative of the first.

### F. John Doe Defendants

"A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint." *Cruz v. New York*, 2017 WL 6021838, at *16 (N.D.N.Y. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 6001833 (Dec. 4, 2017) (collecting cases).

Plaintiff names Does 1-10 as Defendants in the caption of his Amended Complaint. Am. Compl. at p. 1. However, he does not provide any allegations regarding these individuals in the body of the Amended Complaint. As such, the Court recommends **dismissing Does 1-10 without prejudice**.

### III. CONCLUSION

Unless specifically stated otherwise, several of the above recommendations of dismissal are based primarily on pleading deficiencies and not necessarily on the viability of the claims intended to be stated.  Although the Court recommends dismissal of such claims and Defendants, alternatively, in light of Plaintiff's *pro se* status, the Court recommends that on some of these claims that prior to outright dismissal of this action, the Court should afford him the opportunity to file another amended complaint if he desires to proceed.  Should Plaintiff be directed by the District Judge to file a second amended complaint, I offer the following guidance.  Any such second amended complaint, **which shall supersede and replace in its entirety the previous Amended Complaint filed by Plaintiff**, must contain a caption that clearly identifies, by name, each individual that Plaintiff is suing in the present lawsuit and must bear the case number assigned to this action.  The body of Plaintiff's second amended complaint must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**.  Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Importantly, any such pleading must be "**concise and direct**." FED. R. CIV. P. 8(d) (emphasis added).[6]

Plaintiff's second amended complaint shall also assert claims against each and every defendant named in such complaint; **any defendant not named in such pleading shall not be a defendant in the instant action**. Plaintiff is further cautioned that no portion of any prior complaint shall be incorporated into his second amended complaint by reference. **Plaintiff shall state in the single amended complaint all claims that he wishes this Court to consider as a basis for awarding Plaintiff relief herein; his failure to file such a pleading will result in dismissal of this action without further Order of the Court**.

Finally, if Plaintiff does not obtain counsel for his children, he should remove all claims asserted on behalf of his minor children in any further amended complaint.

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Amended Complaint (Dkt. No. 4) be **DISMISSED WITH PREJUDICE** as against Defendants Katherine Thompson and Garfield Raymond; and it is further

**RECOMMENDED**, that Plaintiff's claims against Defendant Vinson be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED**, that insofar as the *pro se* Second Amended Complaint seeks to assert claims on behalf of his two infant children, that such claims be **DISMISSED**

---

[6] The Amended Complaint is 206 pages and 499 paragraphs, and does not comply with this requirement.

**WITHOUT PREJUDICE,** but shall not be repled until the minors are properly represented by counsel; and it is further

RECOMMENDED, that Plaintiff's first cause of action alleging a Due Process violation under 42 U.S.C. § 1983 against Defendants S. Raymond, Colon, Lord, Breen, Cahill, Hoerter and Warren County, for alleged interference with the Plaintiff's rights to custody of his children based upon the use of false, fraudulent, or coerced evidence only, **BE ALLOWED TO PROCEED**, but that the due process claim alleging that the Defendants failed to affirmatively take action to stop the alleged abuse by the grandmother or her son, be **DISMISSED WITH PREJUDICE**; and it is further

RECOMMENDED, that as to Plaintiff's second cause of action, his section 1983 claim for intentional infliction of emotional distress be **DISMISSED WITH PREJUDICE** but that his pendent state law claim be **DISMISSED WITHOUT PREJUDICE**; and it is further

RECOMMENDED, that Plaintiff's third cause of action based upon an alleged abuse of process be **DISMISSED WITHOUT PREJUDICE**; and it is further

RECOMMENDED, that Plaintiff's fourth cause of action for a violation of the Fourth Amendment be allowed to proceed insofar as it alleges that Defendant S. Raymond illegally entered Plaintiff's apartment, but **DISMISSED WITHOUT PREJUDICE** as to the claim that Plaintiff's children were illegally detained, which claim can only be asserted by the children at the point that they are properly represented; and it is further

**RECOMMENDED**, that the Plaintiff's fifth cause of action be **DISMISSED WITHOUT PREJUDICE** as duplicative of the Plaintiff's first cause of action; and it is further

**RECOMMENDED**, that the Amended Complaint be **DISMISSED WITHOUT PREJUDICE** as to Does 1-10; and it is further

**RECOMMENDED**, that in the event these recommendations are adopted by the District Judge and the case is approved to proceed against Defendants S. Raymond; Colon; Lord; Breen; Cahill; Hoerter and Warren County, the Clerk shall return the matter to the undersigned so that an Order can be issued regarding service by the Marshal; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[7] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir.

---

[7] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:  March 21, 2019
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge