**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NICHOLAS LECLAIR,

                                    Plaintiff,                    1:19-cv-0028 (BKS/DJS)

v.

SARAH RAYMOND, et al.,

                                    Defendants.

**Appearances:**

*Plaintiff pro se:*
Nicholas LeClair
Chestertown, New York

*For Defendants Tammy Breen, Terra Cahill, Danielle Colon, Whitney Hoerter, John Lord,*
*Sarah Raymond, and Warren County:*
Stephen M. Groudine
Murphy Burns LLP
407 Albany Shaker Road
Loudonville, New York 12211

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff *pro se* Nicholas LeClair brings this action under 42 U.S.C. § 1983 against

Defendants Tammy Breen, Terra Cahill, Danielle Colon, Whitney Hoerter, John Lord, Sarah

Raymond, and Warren County, among others. (Dkt. No. 4). Presently before the Court is

Plaintiff's motion under Federal Rule of Civil Procedure 15 to file a Second Amended

Complaint, (Dkt. No. 36; *see also* Dkt. No. 36-1 (proposed Second Amended Complaint)), which

Defendants Sarah Raymond, John Lord, Danielle Colon, Tammy Breen, Terra Cahill, Whitney

Hoerter, and County of Warren ("Moving Defendants") oppose, (Dkt. No. 47), and Moving

Defendants' cross-motion under Rule 12(b)(6) to dismiss Count 1 of the Amended Complaint, or, in the event the Court grants Plaintiff's motion to amend, the Second Amended Complaint in its entirety, (*id.*). For the reasons that follow, Plaintiff's Motion to Amend is granted in part and Moving Defendants' motion to dismiss is granted in part.

## II.     PROCEDURAL HISTORY

Plaintiff brought this action on January 7, 2019, (Dkt. No. 1), and amended once as a matter of right. (Dkt. No. 4). This matter was referred to United States Magistrate Judge Daniel J. Stewart, who issued a Report-Recommendation recommending that certain claims and defendants be dismissed. *LeClair v. Vinson ("Leclair I")*, No. 19-cv-28, 2019 WL 1300547, at *10, 2019 U.S. Dist. LEXIS 46812, at *30–32 (N.D.N.Y. Mar. 21, 2019), *report and recommendation adopted*, No. 19-cv-0028, 2019 WL 2723478 (N.D.N.Y. July 1, 2019). The Court adopted the Report Recommendation in its entirety. *LeClair v. Vinson ("Leclair II")*, No. 19-cv-0028, 2019 WL 2723478, at *3, 2019 U.S. Dist. LEXIS 109430, at *6 (N.D.N.Y. July 1, 2019).[1] Two of Plaintiff's claims remain: (1) a substantive due process claim against Moving Defendants and (2) a Fourth Amendment claim against Raymond. *Id.* Plaintiff has now moved to amend his Amended Complaint, attaching a proposed Second Amended Complaint that adds

---

[1] Specifically: (1) Plaintiff's Amended Complaint was dismissed with prejudice as against Defendants Katherine Thompson and Garfield Raymond; (2) Plaintiff's claims against Defendant Vinson were dismissed without prejudice; (3) insofar as the Amended Complaint sought to assert claims on behalf of Plaintiff's two infant children, such claims were dismissed without prejudice; (4) Plaintiff's first cause of action alleging a due process violation under 42 U.S.C. § 1983 against Defendants S. Raymond, Colon, Lord, Breen, Cahill, Hoerter and Warren County, for alleged interference with the Plaintiff's rights to custody of his children based upon the use of false, fraudulent, or coerced evidence, was allowed to proceed, but that the due process claim alleging that the Defendants failed to affirmatively take action to stop the alleged abuse by the grandmother or her son, was dismissed with prejudice; (5)  Plaintiff's second cause of action under § 1983 for intentional infliction of emotional distress was dismissed with prejudice but with leave to replead it as a pendent state law claim; (6) that Plaintiff's third cause of action based on an alleged abuse of process was dismissed without prejudice; (7) that Plaintiff's fourth cause of action for a violation of the Fourth Amendment was allowed to proceed insofar as it alleged that Defendant S. Raymond illegally entered Plaintiff's apartment, but dismissed without prejudice as to the claim that Plaintiff's children were illegally detained; (8) that the Plaintiff's fifth cause of action was dismissed without prejudice as duplicative of the Plaintiff's first cause of action; and (9) that the Amended Complaint was dismissed without prejudice as to Doe Defendants 1–10. *Leclair II*, No. 19-cv-0028, 2019 WL 2723478, at *3 (N.D.N.Y. July 1, 2019).

numerous defendants[2] and causes of action. (Dkt. No. 36).

## III.    FACTS[3]

This case arises out of a custody dispute between Plaintiff (and his wife, Emily Whipple) and his children's maternal grandmother, Lacey Ferguson.[4] (Dkt. No. 36-1, ¶¶ 3, 27). Plaintiff and Whipple have two[5] children, referred to in the Second Amended Complaint as IL and SL. (*Id.* ¶ 3). During the relevant time period, IL was two to three years old and SL was six months to a year and a half old. (*Id.*). Plaintiff and his wife were arrested in New Hampshire, and the children were placed into protective custody. (*Id.* ¶¶ 22, 25). Shortly after being released, Plaintiff relocated to Warren County, New York, and moved in with Ferguson and her 19-year old son, Jacob. (*Id.* ¶ 27; *id.* at 54). Ferguson attempted to obtain custody of IL and SL, which Plaintiff and his wife opposed. (*Id.*). This led to a months-long custody dispute, during which Plaintiff alleges that various employees of the Warren County Department of Social Services ("DSS"), Office of Child Protective Services ("CPS"), and attorneys acted in ways which violated his Fourteenth Amendment (First Claim), Fourth Amendment (Fifth Claim), and First Amendment (Sixth Claim) rights, intentionally or negligently inflicted emotional distress (Third Claim), engaged in malicious abuse of process (Fourth Claim), and "violated [his] federal

---

[2] The Second Amended Complaint adds Marry Chapman, Christian Hanchett, Robert Kelly, Glenn Liebert, Jeffrey Matte, and the County of Cheshire as defendants, and brings new allegations against Jessica Vinson, who was previously dismissed without prejudice. (Dkt. No. 36-1).

[3] The Court incorporates Magistrate Judge Stewart's recitation of the facts alleged in the Amended Complaint. *Leclair I*, 2019 WL 1300547, at *1–3, 2019 U.S. Dist. LEXIS 46812, at *2–9. The facts set forth below are drawn from the Second Amended Complaint and its exhibits, unless otherwise noted. (Dkt. No. 36-1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[4] While the Second Amended Complaint does not list Ferguson's first name, the exhibits attached indicate it is Lacey. (*See, e.g.,* Dkt. No. 36-1, at 42, 44, 50).

[5] While not clear, the Second Amended Complaint suggests that at some point during the events at issue, Plaintiff and Whipple had a third child. (*See* Dkt. No. 36-1, ¶ 78 (stating the Whipple was pregnant); *id.* ¶ 61 (referencing three children); *id.* ¶ 63 (mentioning a child referred to as "NL")).

protections" (Eighth Claim). (*See* Dkt. No. 36-1). It also alleges that Cheshire County violated

his Fourteenth Amendment right to procedural due process (Seventh Claim). (*Id.* ¶ 88). [6] What

follows is a timeline and a summary of the Defendants' alleged conduct.

A.      **Timeline**

Plaintiff and his wife were arrested in New Hampshire on Friday, January 12, 2018. (Dkt.

No. 36-1, ¶ 23). They were not "put in front of a judge for the entire day" and, because it was a

holiday weekend, they were held for five days before seeing a judge. (*Id.* ¶ 25). They were

released "on their own recognizance without any bail" on January 16, 2018, "immediately after

being put in front of" a judge. (*Id.*). The "criminal neglect charges" were "subsequently dropped"

and the New Hampshire court "dismissed all DCYF ["Division of Children, Youth and

Families"] charges, [and] closed the case while simultaneously transferring jurisdiction to

Warren County," New York. (*Id.* ¶ 24).

Shortly after his release from custody, Plaintiff and his wife returned to Warren County

and moved in with Ferguson, Whipple's mother. (*Id.* ¶ 25). She "tried to deceive [Plaintiff and

Whipple] to sign [a] permanent custody transfer form," but "they refused." (*Id.*). Ferguson then

sought custody in Warren County Family Court. (*Id.* ¶ 27). On February 13, 2018, Plaintiff

attended a hearing at Family Court, but Family Court Judge Wilson "was absent." (*Id.*). After a

revision of Ferguson's petition, it was signed by Judge Wilson. (*Id.*). Plaintiff alleges several

social workers, discussed *infra* Section III.B, began to "fabricat[e] state reports . . . maliciously

slandering" the "sanity and parental competency of [Plaintiff] and his wife to frame the loving

and nurturing parents as an 'imminent danger' to their own children." (*Id.* ¶ 28).

---

[6] Plaintiff also alleges *Monell* liability against Warren and Cheshire Counties (Second Claim). (Dkt. No. 36-1, ¶¶ 75–77); *see Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

According to the Family Court record, on March 14, 2018, Family Court Judge Wilson issued a temporary order of custody granting Ferguson legal and physical custody of the children. Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, Mar. 14, 2018 (available on file at Warren County Family Court).[7] According to the order, the court "searched . . . Family Court's child protective records," and "relied upon such results in making this order."

On April 4, 2018, Plaintiff and his wife "passed a Court Ordered Psychological Evaluation" administered by "Merrigan," who had a Ph.D. (*Id.* ¶ 34). Merrigan found that Plaintiff and his wife "were sane and of no danger to their children." (*Id.*). They also "passed the second part" of the psychological evaluation, which was an "independent computer test." (*Id.* ¶ 35). Despite this, on April 16, 2018, the Family Court Judge "ordered" Plaintiff and his wife to move out of Ferguson's house. (*Id.*).  Ferguson then "abandoned" the children with Plaintiff and his wife. (*Id.* ¶ 36).

On May 7, 2018,[8] Family Court Judge Wilson issued a second temporary order of custody, giving Plaintiff, his wife, and Ferguson "joint legal custody of the minor children," and Ferguson "primary physical custody." Second Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, May 7, 2018 (available on file at Warren County Family Court). The court noted that it "relied" on "Family Court's child protective records." *Id.* After returning from Ferguson's care, Plaintiff's children were repeatedly injured and reported being physically hurt by their grandmother and uncle. (Dkt. No. 36-1, ¶¶ 40, 44, 46–48).

---

[7] The Court takes judicial notice of the Family Court orders. *Leclair I*, 2019 WL 1300547, at *1 n.3, 2019 U.S. Dist. LEXIS 46812, at *4 n.3.

[8] The Second Amended Complaint asserts that this occurred on May 8, 2018. (Dkt. No. 36-1, ¶ 38).

On May 29 and July 12, 2018, Judge Wilson issued third and fourth temporary orders of custody, modifying Plaintiff and Whipple's conditions of visitation. Third Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, May 29, 2018 (available on file at Warren County Family Court); Fourth Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, July 12, 2018 (available on file at Warren County Family Court). On August 7, 2018,[9] Judge Wilson issued a fifth temporary order of custody, giving Plaintiff and his wife joint legal and physical custody of their children, and allowing Ferguson overnight visits. Fifth Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, Aug. 7, 2018 (available on file at Warren County Family Court). On October 9, 2018,[10] Judge Wilson issued a final order of custody and visitation, granting Plaintiff and his wife full legal and physical custody of their children, and Ferguson visitation every other Sunday. Final Order of Custody and Visitation, *Ferguson v. Whipple*, File No. 11964, Oct. 9, 2018 (available on file at Warren County Family Court).

Plaintiff filed this action on January 7, 2019. (Dkt. No. 1). On March 21, 2019, Magistrate Judge Stewart issued the Report-Recommendation. *Leclair I*, 2019 WL 1300547, 2019 U.S. Dist. LEXIS 46812. On that same day, "Warren County DSS began a false report" against Plaintiff, and "sent 2 Troopers" to his residence to do a "welfare check." (*Id.* ¶ 61). The children were "witnessed as clean, healthy, and with no injuries." (*Id.*). The next day, a trooper "demand[ed] entry to inspect Plaintiff's residence" based on the fabricated DSS report that stated the condition of the home was "deplorable, covered in animal feces and urine," and Plaintiff was "mentally ill." (*Id.* ¶ 62). On April 26, 2019, Plaintiff received a letter from CPS falsely stating

---

[9] The Second Amended Complaint asserts that this occurred on July 18, 2018. (Dkt. No. 36-1, ¶ 52).

[10] The Second Amended Complaint alleges that this occurred on August 22, 2018. (Dkt. No. 36-1, ¶ 55).

that IL "was not up to date on his 'wellness checkup.'" (*Id.* ¶ 65). Plaintiff was mailed a letter

dated May 2, 2019, informing him that the "report of suspected child abuse" that was initiated on

March 21, 2019 was "determined to be 'unfounded.'" (*Id.* at 68). On June 15, 2019, "Plaintiff

served notice of [Intentional Infliction of Emotional Distress/Negligent Infliction of Emotional

Distress] to Warren County's Attorney Kissane." (*Id.* ¶ 66).

### B. Defendants

#### 1. Jeffrey Matte

Matte is an attorney and an "employee of Matte and Nenningmer LLP." (*Id.* ¶ 13). After

Plaintiff returned to Warren County following his arrest, he and his wife "met with" Matte "at

his law office" and "established a substantial [a]ttorney/[c]lient relationship as they discussed

privileged information of the custody case of their minors, and [Matte] gave both parents legal

advice." (*Id.* ¶ 26). Matte then represented Lacey Ferguson in the custody dispute, and

"fraudulently conceal[ed] his [c]onflict of [i]nterest." (*Id.* ¶ 34). After Ferguson "stole her

daughter[']s N[ew] H[ampshire] police files," Matte "filed an Amended Permanent Custody

Petition" against Plaintiff and his wife "that was composed almost entirely" of these "stolen

documents." (*Id.* ¶ 35). On June 11, 2018, Matte "made an application [to Family Court] to

remove the children for '45' days and give [Ferguson] 'temporary sole legal custody' so she

could 'force vaccinate' LeClair children against the family's sincerely held religious beliefs."

(*Id.* ¶ 41).

#### 2. Glenn Liebert

Liebert is a Warren County Public Defender who was assigned to represent Plaintiff in

the custody dispute. (*Id.* ¶¶ 12, 30). On March 19, 2018, Liebert filed a motion to dismiss the

case based on the legal argument that "a Court should not entertain a custody Petition when all

parties live in the same residence." (*Id.* ¶ 32). Liebert was "absent from the Court" on April 2,

2018, "the date assigned to" the motion to dismiss. (*Id.*). After Plaintiff "passed a Court Ordered Psychological Evaluation," Liebert "refused to apply the law or apply the PhD's findings or protect the integrity of the Court from Matte's procedural violations" and "refused to even ask for 'joint custody'" for Plaintiff and his wife. (*Id.* ¶¶ 34–35). At a hearing on May 8, 2018, Liebert "deliberately withheld exculpatory evidence." (*Id.* ¶ 38). On June 11, 2018, Liebert "incriminated" Plaintiff "as not living in his apartment, concealed IL's rib bruise," and concealed that Ferguson "violated court orders." (*Id.* ¶ 41). On June 18, 2018, Plaintiff fired Liebert "after he refused to seek objectives or disclose [Matte's] conflict." (*Id.* ¶ 43). On June 27, 2018, Liebert told Plaintiff he would disclose Ferguson's child abuse to the court, "yet he never did." (*Id.* ¶ 50). Instead, he "framed" Plaintiff "as mentally unstable and having a volatile email tirade against [him] that . . . never happened." (*Id.*). Specifically, Liebert moved to be relieved from representing Plaintiff, submitting a sworn affidavit that claimed the Plaintiff committed "personal attack[s]" against him, including an "email tirade." (*Id.* at 59–62).

### 3.   Robert Kelly

Kelly is a private attorney "employed by Warren County Assigned Counsel" who was assigned to represent Whipple in the Family Court proceedings. (*Id.* ¶¶ 15, 33). Like Liebert, Plaintiff alleges that Kelly "concealed the impropriety of his co-Defendants and the County, and refused to apply the law or seek his client's objectives, and eventually submitted (perjury) filings to frame his client." (*Id.* ¶ 33). He failed to "disclose[] child abuse injuries, or apply exculpatory evidence in favor of [his] client[]." (*Id.* ¶¶ 33, 38). He also did not file any written motions or "an answer on behalf of his client," "therefore eras[ing] the mother's existence and role from the written record to frame the family as not intact." (*Id.* ¶ 33).

4.      **Jessica Vinson**

Vinson is "an attorney at Bartlett, Pontiff, Stewart & Rhodes, P.C." and "an employee of the NY state's Office of Attorneys for the Children." (*Id.* ¶ 7). She was appointed to represent Plaintiff's children in Family Court. (*Id.* at 46). On February 13, 2018, she helped Ferguson revise her custody petition to include DCYF as a party. (*Id.* ¶ 27). On April 4, 2018, she "unjustly asked for the continuation of the [court] proceeding and the separation of the family." (*Id.* ¶ 34). On May 2, 2018, Vinson "committed perjury and judicial deception [in] her affirmation . . . submitted to" Family Court "to maliciously conceal the Ferguson's abandonment of the children and further prejudice the record against the parents and asked for a contempt finding." (*Id.* ¶ 37; *id.* at 46–48).

5.      **Sarah Raymond**

Sarah Raymond is a social worker employed by DSS and CPS. (Dkt. No. 36-1, ¶ 4). She is Ferguson's third cousin. (*Id.* ¶ 31). After the Warren County Family Court ordered an investigation, (*id.* at ¶ 39), on February 16, 2018, Raymond "began a defamation campaign of fabricating state reports," in which she "willfully fabricated records and omitted exculpatory evidence" and "slander[ed] the . . . sanity and parental competency of [Plaintiff] and his wife to frame the loving and nurturing parents as an 'imminent danger' to their own children." (*Id.* ¶ 28). Her reports included "numerous outrageous false statements" including that Plaintiff "believes that the government implanted a chip to track him," would "not allow IL to play on the floor or with toys for fear of germs," and was "over protective" and "neglectful." (*Id.*; *see also id.* at 38–42).

Raymond's supervisors "knew [her] reports were fabricated," and "a plan" was "hatched" to "coerce [Plaintiff] and his wife into forced statements on February 27, 2018." (*Id.* ¶ 31). She arrived at their residence, "greeted her third-cousin Ferguson," and "proceeded to question the

9

mother and Plaintiff" while "off-duty." (*Id.*). Raymond "became enraged," "threatened" to send the children back to foster care in New Hampshire and made "further threats for over an hour." (*Id.*).

Plaintiff alleges Ferguson—who was abusive to Whipple as a child—and her son Jacob were "abusive" toward his children while they had custody of them. (*Id.* ¶¶ 43–47). On June 22, 2018, IL "returned to his parents with a severe ear laceration," and told his parents that Jacob Ferguson had "yanked him off his bike by his ear, into the air." (*Id.* ¶ 44). On June 27, 2018, Raymond and Terra Cahill, another CPS employee, (*id.* ¶ 9), "arrived at [Plaintiff's] home" and "committed coercive interview techniques, refusing to interview IL about his injury." (*Id.* ¶ 47). In order to "protect her third-cousin Ferguson," Raymond "never asked IL a single question" during the visit, and "fabricated" the report to indicate that IL was "'non-verbal.'" (*Id.*). In addition to reporting Ferguson's alleged abuse of IL, Whipple attempted to describe the abuse Ferguson had inflicted on her as a child. (*Id.*). In response, Raymond and Cahill "yelled at and threatened" Whipple, telling her "that the Defendants would frame [Whipple with] the injury . . . if she continued to report the child abuse or speak about Ferguson's abusive past." (*Id.*).

On July 2, 2018, "IL returned with a groin bruise and a scratch on his testicles" after being in Ferguson's care. (*Id.* ¶ 48). Plaintiff anonymously reported this injury. (*Id.* ¶ 49). On July 6, 2018, Raymond arrived at Plaintiff's residence, and "maliciously altered [the] report to be about [an] ear laceration only." (*Id.*).

On August 3, 2018, Raymond "illegally entered [Plaintiff's] residence"— "deliberately against the Plaintiff and his wife's commands." (*Id.* ¶ 53). She "knew she was not allowed in the residence, and asked to see the kids outside," but then "illegally entered into the house." (*Id.*).

10

### 6.    Terra Cahill

As discussed *supra* Section III.B.5, Cahill is a social worker who accompanied Raymond to Plaintiff's home on June 27, 2018 to investigate Plaintiff's allegations of child abuse. (Dkt. No. 36-1, ¶¶ 9, 47). The Second Amended Complaint also alleges, without further detail, that Cahill sought her supervisors' "advice" and "consent before the deliberate omission of [e]vidence and unlawful altering of Reports that framed the loving and nurturing parents as mentally ill, neglectful, dangerous, and the family as broken and not intact." (*Id.* ¶ 74).

### 7.    Whitney Hoerter

Whitney Hoerter is a DSS social worker whom Plaintiff alleges was involved with Raymond's falsified reports. (*Id.* ¶¶ 10, 28–29). On May 29, 2018, Hoerter was "presented with medical evidence that the [children] never had any 'weight gain issues' or been malnourished" but she "refused to correct her" reports and "remove the 'failure to thrive' findings." (*Id.* ¶ 39). She also "fabricated that both children were 'mentally delayed'" and framed Plaintiff and Whipple as "mentally ill," despite contrary evidence from a psychological evaluation Plaintiff underwent. (*Id.*; *see id.* at 50–52).

On June 25, 2018, after IL was injured while in Ferguson's care, Hoerter conducted a "'Preventative' meeting" at the "LeClair residence. (*Id.* ¶ 45). Hoerter refused Whipple's request "to put in her service plan . . . that Ferguson not abuse the children" or that Ferguson be taught "'non-physical discipline' techniques." (*Id.*). At that time, Hoerter also "refused to accept the exculpatory evidence from a PhD [who had examined Plaintiff] and still fabricated and defamed Plaintiff in reports" that he should "continue to seek mental health counseling." (*Id.*).

On August 22, 2018, Hoerter "coerced Plaintiff into signing her 'Service Plan.'" (*Id.* ¶ 54). Plaintiff asked "'why [Hoerter's] fabricated records stated 'attend all mental health

appointments' when she had exculpatory evidence from a PhD stating LeClair was mentally competent," but Hoerter "refused to correct [the] false reports." (*Id.*).

### 8.     Danielle Colon

Danielle Colon is a social worker employed by CPS. (*Id.* ¶ 6). After IL returned from a November 4, 2018 visit with Ferguson and reported that he was "choked by [his] uncle," Whipple made a report to CPS. (*Id.* ¶ 56). On November 19, 2018, Colon "arrived at [Plaintiff's] house, inspected [it] and left without asking IL a single question." (*Id.*). After "18 days elapsed," Plaintiff called Lord "and asked if it was 'protocol to not interview children about abuse?'" (*Id.*). On December 7, 2018, Colon "interviewed IL." (*Id.* ¶ 57). Colon told Plaintiff and Whipple that she did not interview IL on November 19 because Raymond's report stated that IL was "nonverbal." (*Id.* ¶ 57). During the interview, IL "corroborated the uncle's choking." (*Id.*). Colon wrote in her report that "[t]he roles of the mother (Emily) and IL's sister (SL) are unknown," which Plaintiff alleges was false because Colon knew "they were an intact family." (*Id.*; *id.* at 64). Colon told Plaintiff that "[e]ven when we should make indications, sometimes the state or our supervisors won't let us." (*Id.* ¶ 57). Despite this ambiguous statement, on December 21, 2018, "an Order of Protection on behalf of IL and SL was placed against the Fergusons." (*Id.*).

### 9.     Marry Chapman

Marry Chapman is a social worker employed by CPS. (*Id.* ¶ 14). On March 22, 2019, she "demanded entry to inspect Plaintiff's residence and children due to an outrageous report fabricated by DSS." (*Id.* ¶ 62) (emphasis omitted). On March 29, 2019, she returned to Plaintiff's residence and went "through the kids medical records" with Plaintiff and his wife. (*Id.* ¶ 64). She also "went through the entire LeClair house and noted it was clean." (*Id.*). She incorrectly claimed that IL "hadn't spoken to her" during her inspection on March 22, 2019. (*Id.*). On April

26, 2019, Plaintiff received a letter signed by Chapman incorrectly stating that IL was not up to date on his "wellness checkup," even though Chapman knew he was "up to date." (*Id.* ¶ 65).

### 10.    Tammy Breen and John Lord

Tammy Breen and John Lord are CPS supervisors. (*Id.* ¶¶ 5, 8). Plaintiff alleges they are "responsible for implementing the customs of encouraging and/or ordering [their] subordinates to fabricate reports and ignore exculpatory evidence." (*Id.*). Specifically, the reports falsified by Raymond and Hoerter in Plaintiff's family court case were produced "under the direct supervision and approval of" Lord and Breen. (*Id.* ¶ 29).

Lord signed a letter sent to Plaintiff, which notified him that IL "was not up to date on his 'wellness checkup," even though this was untrue. (*Id.* ¶ 65; *id.* at 66). Lord "pressured" social worker Marry Chapman to "fabricate[] a medical neglect allegation." (*Id.*)

### 11.    Warren County

Plaintiff alleges that Warren County has a "de facto policy of [a]busing the process and fabricating County records against poor and uneducated families to remove and place young and desirable children." (*Id.* ¶ 29). The "County's policy of targeting poor and uneducated families . . . to frame them through falsified" records "is for the purposes of removing or withholding children and placing them in wards of the state or with private confidant[s], for the motive of boosting statistical analysis for the state and federal funding increases to their DSS agencies." (*Id.*). The County fabricates records in order to lead "those subjected parents to react in a negative manner," enabling it to "utilize those elicited emotional reactions from distraught parents to label them as emotionally unstable or mentally ill." (*Id.*).

### 12.    Christian Hanchett

Hanchett is the County Commissioner of DSS. (*Id.* ¶ 11). Plaintiff alleges that Hanchett "approv[ed] and/or [was] gross[ly] negligen[t]" of Warren County's unconstitutional customs.

(*Id.* ¶ 29). In support, Plaintiff alleges that Hanchett was "served with affidavits and exhibits twice," in April and June 2019, regarding the current lawsuit. (*Id.*). He also alleges that Breen and Lord "acted under the supervision and protocol of" Hanchett. (*Id.* ¶ 74).

### 13.    Cheshire County, New Hampshire

Plaintiff alleges that "Cheshire officials asked Warren [County] officials to abuse the process" after releasing him from custody in New Hampshire. (*Id.* ¶ 24). He also alleges Cheshire County officials "maliciously refused to allow Plaintiff or his wife to see a Judge for the entire day of 1/12/18" knowing that it was a holiday weekend and Plaintiff would be imprisoned for "at least 5 days." (*Id.* ¶ 89).

## IV.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "'[A]bsent evidence of undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility,'" "leave to amend should be given." *Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) (quoting *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000)). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'"

*Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist.
LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court
accepts as true all factual allegations in the complaint and draw all reasonable inferences in the
plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI
Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a
court must accept as true all of the allegations contained in a complaint is inapplicable to legal
conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While *pro se* complaints must
contain sufficient factual allegations to meet the plausibility standard, [courts] read them with
'special solicitude' and interpret them 'to raise the strongest arguments that they *suggest*.'"
*Roman v. Donelli*, 347 F. App'x 662, 663 (2d Cir. 2009) (summary order) (quoting *Triestman v.
Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)).

## V.      DISCUSSION

### A.      Failure to Follow Local Rules

Moving Defendants contend that the Court should deny Plaintiff's motion to amend
because Plaintiff failed "to file an accompanying Memorandum of Law in support of his Motion
to Amend the Complaint" and "to identify the supplemental and/or amended material added to
the First Amended Complaint," as required by the Local Rules of the Northern District of New
York. (Dkt. No. 47-1, at 8–9 (citing N.D.N.Y. Local Rule 7.1(a)(1), (4))). Plaintiff argues that
"[a]ny procedural errors were not in bad faith" and, as a *pro se* litigant, he should "be afforded
leniency." (Dkt. No. 51, at 6).

The Court agrees with Plaintiff. "It is well established that a court is ordinarily obligated
to afford a special solicitude to *pro se* litigants," because "a *pro se* litigant generally lacks both
legal training and experience, and, accordingly, is likely to forfeit important rights through
inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90,

15

101 (2d Cir. 2010). This solicitude "embraces relaxation of the limitations on the amendment of

pleadings," *id.*, and a "*pro se* plaintiff, particularly one bringing a civil rights action, should be

afforded an opportunity fairly freely to amend his complaint." *Holmes v. Goldin*, 615 F.2d 83, 85

(2d Cir. 1980). Accordingly, the Court declines to deny Plaintiff's motion to amend for failing to

follow the Local Rules. *See Rawls v. Rosenfield*, No. 16-cv-0582, 2017 WL 7050648, at *4, 2017

U.S. Dist. LEXIS 196037, at *13 (N.D.N.Y. Nov. 28, 2017) (declining to dismiss a plaintiff's

claims due to a failure to follow the Local Rules because of the "special solicitude" afforded *pro*

*se* plaintiffs), *report and recommendation adopted*, No. 16-cv-0582, 2018 WL 542249, 2018

U.S. Dist. LEXIS 10111 (N.D.N.Y. Jan. 23, 2018).

### B.    Failure to Correct Repeated Deficiencies

The Report-Recommendation specified that any amended complaint must "contain

sequentially numbered paragraphs containing only one act of misconduct per paragraph," and

"must be 'concise and direct'" in accordance with Federal Rule of Civil Procedure 8(d). *LeClair*

*I*, 2019 WL 1300547, at *9, 2019 U.S. Dist. LEXIS 46812, at *28 (emphasis omitted). Moving

Defendants contend that Plaintiff's motion to amend should be denied because it has "failed to

remedy these repeated deficiencies." (Dkt. No. 47-1, at 14). Plaintiff "ask[s] that the Court

provide a liberal standard [of pleading] befitting [a] pro se [litigant]," and further argues that the

Second Amended Complaint "spell[s] out the facts for which" Moving Defendants are liable

(Dkt. No. 51, at 6).

While "[t]he pleading of additional evidence, beyond what is required to enable the

defendant to respond, is not only unnecessary, but in contravention of proper pleading

procedure," *Roth v. Jennings*, 489 F.3d 499, 512 (2d Cir. 2007) (citations and internal quotation

marks omitted), dismissal on these grounds is "generally 'disfavored.'" *Grimes v. Fremont Gen.*

*Corp.*, 933 F. Supp. 2d 584, 595 (S.D.N.Y. 2013) (quoting *Foreman v. Comm. Goord*, No. 02-

cv-7089, 2004 WL 385114, at *4, 2004 U.S. Dist. LEXIS 3133, at *11 (S.D.N.Y. Mar. 2, 2004)).

This is particularly true for *pro se* litigants, because "[t]he solicitude afforded to" them "often

consists of liberal construction of pleadings" and "embraces relaxation of the limitations on the

amendment of pleadings." *Tracy*, 623 F.3d at 101; *see also Phillips v. Girdich*, 408 F.3d 124,

130 (2d Cir. 2005) (noting that while the plaintiff's "allegations were not neatly parsed and

included a great deal of irrelevant detail, that is not unusual from a *pro se* litigant").

Here, the Second Amended Complaint is 35 pages long[11] and contains 90 paragraphs,

many of which contain more than one act of misconduct. (*See* Dkt. No. 36-1). While falling short

of the Report-Recommendation's instructions, the Second Amended Complaint is significantly

more direct and concise than the Amended Complaint, which spanned 206 pages and 499

paragraphs. (Dkt. No. 4). Further, the Court finds that the Second Amended Complaint fulfills

"[t]he function of pleadings under the Federal Rules," which is "to give fair notice of the claims

asserted." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (citations and internal quotation

marks omitted); *see also Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F.

Supp. 3d 319, 345 (S.D.N.Y. 2014) ("Instead of focusing on whether a complaint's allegations

are 'short and plain' or 'simple, concise, and direct,' the Court asks whether the complaint gives

'fair notice' to the defendants.").

Given Plaintiff's *pro se* status and the solicitude afforded to him, the Court thus declines

to deny Plaintiff's motion to amend on the grounds that he has repeatedly failed to cure

deficiencies. As leave to amend should be "freely given when justice so requires," *Foman*, 371

---

[11] Moving Defendants erroneously state that the Second Amended Complaint is "approximately one hundred seventy (170) page[s]" long. (Dkt. No. 47-1, at 14).

U.S. at 182 (quoting Fed. R. Civ. P. 15(a)), the Court thus grants Plaintiff's motion to amend to the extent it is not futile, as discussed *infra* Section III.C.

### C.      Futility

Moving Defendants further argue that Plaintiff's motion to amend should be denied because amendment is futile. (Dkt. No. 47-1, at 9–10). The Court now analyzes whether Plaintiff's amendment is futile as to both the Moving Defendants and the new defendants added in the Second Amended Complaint.

### 1.      Fourteenth Amendment Substantive Due Process (First Claim)

Moving Defendants contend that Plaintiff's substantive due process claim should be dismissed because "there is no causal link between any of the specific actions of the defendants and the proceedings in Family Court," and Moving Defendants were not personally involved in Plaintiff's loss of custody. (Dkt. No. 47-1, at 11–12). Plaintiff contends that the Second Amended Complaint "demonstrates a 'causal link' between Defendants' conduct and the constitutional deprivations" by alleging their personal involvement, including "the date of which every fabricated report was entered and approved into the Warren County Records which, logically reasoned, tainted every [f]amily [p]roceeding thereafter." (Dkt. No. 51, at 7).

"It is well settled that parents have 'a constitutionally protected liberty interest in the care, custody and management of their children.'" *McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 3 (2d Cir. 2013) (quoting *Southerland v. City of N.Y.*, 680 F.3d 127, 142 (2d Cir. 2011)). "Although parents enjoy a constitutionally protected interest in their family integrity, this interest is counterbalanced by the 'compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'" *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d Cir. 1999) (quoting *Manzano v. South Dakota Dep't of Social Servs.*, 60 F.3d 505, 510 (8th Cir. 1995)). The

government's interest, "though compelling, is not so compelling as to derogate a parent's constitutional rights completely. Case workers cannot be free to substantiate a claim of abuse, for instance, by ignoring overwhelming exculpatory information or by manufacturing false evidence." *Id.* "[S]hort of these obvious extremes . . . [a]n investigation passes constitutional muster provided simply that case workers have a 'reasonable basis' for their findings of abuse." *Id.*; *see also Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) ("Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional." (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999))). However, even when there is egregious conduct, "[w]here there is no actual loss of custody, no substantive due process claim can lie." *Cox*, 654 F.3d at 276 (citations omitted).

In addition, a plaintiff must allege that a defendant was personally involved in and proximately caused the constitutional deprivation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) ("A defendant's conduct must be a proximate cause of the claimed violation in order to find that the defendant deprived the plaintiff of his rights." (quoting *Martinez v. California*, 444 U.S. 277, 285 (1980))); *see also Monroe v. Pape*, 365 U.S. 167, 187, (1961) (Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions"). With these principles in mind, the Court considers the allegations against each Defendant.

### a.      Raymond and Hoerter

Plaintiff alleges that Raymond and Hoerter both falsified CPS reports. (Dkt. No. 36-1, ¶¶ 28, 39). Raymond made "numerous outrageous false statements meant to be accepted as fact in

[c]ourt," including that Plaintiff "believes that the government implanted a chip in him to track him." (*Id.* ¶ 28; *see also id.* at 38–42). Hoerter ignored "medical evidence that the LeClair children never had any 'weight gain issues' or been malnourished, [and] refused to correct her" report, and "fabricated that both children were 'mentally delayed' and framed Plaintiff an[d] [Whipple] as 'mentally ill'" (*Id.* ¶ 39; *see also id.* at 50–52).

Plaintiff thus plausibly alleges that Raymond and Hoerter engaged in "extreme" behaviors, including ignoring exculpatory evidence and manufacturing false evidence, implicating his due process rights. *See Wilkinson*, 182 F.3d at 104. Moving Defendants' contention that this claim should be dismissed because there is no "allegation that any false/fraudulent/coerced evidence allegedly created/obtained from CPS/DSS employees . . . was presented to the Court for evaluation of custody and that evidence resulted in custody being taken away or lessened" is unavailing. (Dkt. No. 47-1, at 13). Particularly given Plaintiff's *pro se* status, "[w]hen considering a motion to dismiss the court must read [his] pleadings to 'raise the strongest arguments that they suggest.'" *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 187 (S.D.N.Y. 2018) (quoting *Triestman*, 470 F.3d at 477). Plaintiff has alleged that Raymond's statements were "meant to be accepted as fact in Court," (Dkt. No. 36-1, ¶ 28), and submitted a copy of her report, which states in its "intake narrative" that Warren County Family Court ordered the investigation. (*Id.* at 39). Additionally, each decision in the family court record states that the court "searched . . . Family Court's child protective records," and "relied upon such results." Taken together, these facts suggest that the DSS reports created by Raymond and Hoerter—which Plaintiff alleges contained fabrications—were viewed and considered by Judge Wilson in his decisions to give temporary custody of Plaintiff's children to Ferguson. Further, in his opposition, Plaintiff states that the DSS reports were reviewed by the Family Court. (Dkt. No.

51, at 8).[12] Accordingly, the Court grants Plaintiff's motion to amend as to his Fourteenth

Amendment substantive due process claims against Raymond and Hoerter, because he has stated

a plausible claim for relief against them.[13]

### b.      Colon and Chapman

Plaintiff alleges that, after IL reported abuse by Ferguson and her son in November 2018,

Colon investigated but did not "ask[] IL a single question." (Dkt. No. 36-1, ¶ 56). Additionally,

she told them that "[e]ven when we should make indications [of abuse], sometimes the state or

our supervisors won't let us." (*Id.* ¶ 57). Plaintiff also alleges Colon "falsified records" because

her report stated that "[t]he roles of the mother (Emily) and IL's sister (SL) are unknown."[14]

(*Id.*). He alleges that Chapman investigated a fabricated DSS report in March 2019, and then sent

him a letter in April 2019 that incorrectly stated that IL was not up to date on his wellness

checkup. (*Id.* ¶¶ 62, 64–65).

Colon and Chapman's actions occurred after Plaintiff and his wife retained permanent

full custody of their children on October 9, 2018. Final Order of Custody and Visitation,

*Ferguson v. Whipple*, File No. 11964, Oct. 9, 2018 (available on file at Warren County Family

Court). Thus, as Moving Defendants argue, "there is no causal link between [Colon and

---

[12] "[F]actual allegations made in a pro se plaintiff's opposition papers may be considered 'as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint.'" *Harris*, 338 F. Supp. 3d at 187 (quoting *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *6 n.7, 2012 U.S. Dist. LEXIS 91014, at *19 (S.D.N.Y. June 29, 2012)).

[13] Given that the Court has found that the Second Amended Complaint is not futile as to Raymond and Hoerter, it denies Moving Defendant's motion in the alternative that it be dismissed for failure to state a claim. (Dkt. No. 47). This determination is not altered by the fact that Raymond and Hoerter did not have any personal involvement "in the initial removal of [Plaintiff's] children from the custody of their parents in New Hampshire, which started the entire Family Court process," as argued by Moving Defendants. (Dkt. No. 47-1, at 11). Raymond and Hoerter allegedly falsified reports, which were then reviewed by and relied on by the Warren County Family Court in granting temporary custody to Ferguson. Plaintiff has thus alleged sufficient facts that they were personally involved in depriving him of custody over his children.

[14] While the Amended Complaint contains additional allegations regarding Colon, like the allegations in the Second Amended Complaint, all of Colon's purported actions took place after Plaintiff obtained full custody of his children. (*See, e.g.*, Dkt. No. 4, at 71, 118, 120–22).

Chapman's] purported actions and any deprivations of [P]laintiff's constitutional rights." (Dkt. No. 47-1, at 11). Given that Plaintiff had regained custody of his children at the time of Colon and Chapman's actions, his substantive due process claim against them fails. *See Cox*, 654 F.3d at 276. Accordingly, Moving Defendants' motion to dismiss the Fourteenth Amendment substantive due process claim against Colon is granted. As the Second Amended Complaint adds no allegations suggesting any conduct by Colon after Plaintiff obtained custody, Plaintiff's motion to amend is denied as futile with respect to Colon. Plaintiff's motion to amend is likewise denied as futile with respect to Chapman.

### c.      Cahill

Plaintiff alleges that, in June 2018, Cahill and Raymond used "coercive interview techniques" in responding to Plaintiff's report that IL had sustained an ear laceration while in Ferguson's care and "refus[ed] to interview IL." (Dkt. No. 36-1, ¶ 47; Dkt. No. 4, ¶ 201). Cahill would not "ask IL . . . how he got the 5 bruises." (Dkt. No. 4, ¶ 233). They also "malicious[ly] threat[ened] to frame [Whipple] for the injury." (Dkt. No. 36-1, ¶ 47; *see also* Dkt. No. 4, ¶ 205). While the Second Amended Complaint alleges that Raymond "fabricated that [IL] was 'non-verbal'" in a report based on this encounter, (Dkt. No. 36-1, ¶ 47), it does not specify Cahill's involvement in that report. Given that neither the Amended Complaint nor the Second Amended Complaint allege or suggest that Cahill's actions influenced the Family Court's decision regarding custody, the Court agrees with Moving Defendants that it has failed to allege a "causal link between" Cahill's action and "the proceedings in Family Court." (Dkt. No. 47-1, at 11).[15]

---

[15] Plaintiff's opposition provides no further details about Cahill's involvement, other than the fact that she assisted Raymond in the "coercive interview[]." (Dkt. No. 51, at 8). The Second Amended Complaint also alleges that Cahill, along with Raymond, Chapman, Colon, and Hoerter, sought the "advice" and "consent" of their supervisors "before the deliberate omission of [e]vidence and unlawful altering of Reports that framed the loving and nurturing parents as mentally ill, neglectful, dangerous, and the family as broken." (Dkt. No. 36-1, ¶ 74). However, without more, this allegation against Cahill is vague and lacks sufficient detail.

Accordingly, the Court grants Moving Defendants' motion to dismiss this claim as to Cahill and denies Plaintiff's motion to amend as futile.

### d.      Lord and Breen

The Second Amended Complaint alleges that Lord and Breen "knew [Raymond's] reports were fabricated," (Dkt. No. 36-1, ¶ 31), and that Raymond and Hoerter's fabricated reports were "published . . . under the direct supervision and approval of [Breen] and [Lord]." (*Id.* ¶ 29; *see also id.* ¶ 49). Additionally, it alleges that Raymond, Cahill, Chapman, Colon, and Hoerter "sought Supervisors [Lord] and [Breen's] advice . . . and consent before the deliberate omission of [e]vidence and unlawful altering of Reports," (*Id.* ¶ 74), and that Breen and Lord "knowingly carried out the polic[y]" of, inter alia, "fabricating reports and records of targeted families selected from the class of low income and who possess young children desirable for quick adoptions." (*Id.* ¶¶ 73(a), 74).

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). The Second Circuit has held that personal involvement of a supervisory defendant may be shown in several ways. In addition to (1) direct participation, a plaintiff may show that:

> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the [constitutional] rights . . . by failing to act on information indicating that unconstitutional acts were occurring

(the "*Colon* factors"). *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)).

Here, as discussed *supra* Sections V.C.1(b)–(c), the Court dismisses the Fourteenth Amendment claims against Colon, Cahill, and Chapman. Given that neither the Amended Complaint nor the Second Amended Complaint allege sufficient facts to show that their actions deprived him of a constitutional right, Lord and Breen's alleged involvement cannot support a claim. Accordingly, Moving Defendants' motion to dismiss is granted as to Breen and Lord to the extent the due process allegations are related to Colon and Cahill's conduct, and the motion to amend is denied as futile as to this claim. The motion to amend is also denied as futile as to Breen and Lord to the extent the due process allegations are related to Chapman's conduct. However, regarding the allegedly fabricated reports submitted by Raymond and Hoerter—and approved by Breen and Lord—Plaintiff's allegations are sufficient at this stage to allege Breen and Lord's personal involvement under *Colon*. 58 F.3d 865. For example, under *Colon's* first factor, "a 'direct participant' includes a person who authorizes, orders, or helps others to do the unlawful acts, even if he or she does not commit the acts personally." *Terebesi v. Torreso*, 764 F.3d 217, 234 (2d Cir. 2014). Plaintiff's allegations that Raymond and Hoerter sought the advice and consent of Breen and Lord before creating their fabricated reports is sufficient to allege their direct participation. As such, Plaintiff's motion to amend is granted with respect to this claim and Moving Defendants' motion to dismiss is denied as moot.

### e.    Hanchett

Unlike Breen and Lord, Plaintiff does not allege the requisite personal involvement of Hanchett. While the Second Amended Complaint alleges in a conclusory fashion that Hanchett "approv[ed] and/or [was] gross[ly] negligen[t]" of Warren County's unconstitutional customs, (Dkt. No. 36-1, ¶ 29), it does not allege any specific facts from which the Court could reasonably infer Hanchett's personal involvement under the *Colon* test. While the Second Amended Complaint alleges that Hanchett was twice served with exhibits and affidavits in 2019, this

24

occurred after Plaintiff regained custody of his children, and therefore cannot serve as a basis for Hanchett's personal involvement in the constitutional deprivation. *See Cox*, 654 F.3d at 276. Accordingly, Plaintiff's motion to amend to add a Fourteenth Amendment substantive due process claim against Hanchett is denied for futility.

### f.   Vinson

The Report-Recommendation dismissed the Amended Complaint's Fourteenth Amendment substantive due process claim against Vinson because "it is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action" for the purposes § 1983. *LeClair I*, 2019 WL 1300547, at *6–7, 2019 U.S. Dist. LEXIS 46812, at *17–19 (citing *Koziol v. King*, No. 14-cv-946, 2015 WL 2453481, at *11, 2015 U.S. Dist. LEXIS 66840, at *33  (N.D.N.Y. May 22, 2015)). The Second Amended Complaint does not add any facts from which the Court can plausibly infer that Vinson's conduct "is fairly attributable to the State, an essential prerequisite to a § 1983 claim." *Id.* at *6, 2019 U.S. Dist. LEXIS 46812, at *18; *see also Amato v. McGinty*, No. 17-cv-593, 2017 WL 9487185, at *6, 2017 U.S. Dist. LEXIS 87497, at *15 (N.D.N.Y. June 6, 2017) ("Private conduct is simply beyond the reach of section 1983 'no matter how discriminatory or wrongful that conduct may be.'" (quoting *Lucas v. Riggi*, No. 07-cv-6200, 2008 WL 4758706, at *1, 2008 U.S. Dist. LEXIS 87310, at *2 (W.D.N.Y. Oct. 29, 2008))), *report and recommendation adopted*, 2017 WL 4083575, 2017 U.S. Dist. LEXIS 150198 (N.D.N.Y. Sept. 15, 2017). While the Report-Recommendation noted that "private actors may be proper section 1983 defendants when they conspire with state actors," it also stated that "a mere conclusory allegation that a private individual acted in concert with state officials is wholly insufficient." *LeClair I*, 2019 WL 1300547, at *6–7, 2019 U.S. Dist. LEXIS 46812, at *17–19. Like the Amended Complaint, the Second Amended Complaint's allegations that Vinson

colluded or conspired with Warren County officials are vague and conclusory, and do not establish that Vinson's actions are fairly attributable to the state. Accordingly, the Court denies Plaintiff's motion to amend to add a Fourteenth Amendment substantive due process claim against Vinson as futile.

### g.    Matte and Kelly

Similar to his claims against Vinson, Plaintiff's claims against Matte and Kelly fail because they are private attorneys and thus their actions cannot be fairly attributable to the State. *See supra* Section V.C.1.f. Plaintiff's allegations that Matte and Kelly conspired with state actors are conclusory and do not raise a reasonable inference that they acted in concert with state officials. Accordingly, the Court denies Plaintiff's motion to amend to add a Fourteenth Amendment substantive due process claims against Matte and Kelly as futile.

### h.    Liebert

The Second Amended Complaint brings a Fourteenth Amendment substantive due process claim against Liebert, the public defender assigned to represent Plaintiff in Family Court. (Dkt. No. 36-1, ¶¶ 12, 67–74). "However, it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are no subject to suit under 42 U.S.C. § 1983." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997); *see also Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel."). The Second Amended Complaint's allegations against Liebert concern his role as Plaintiff's counsel, and thus the Court denies Plaintiff's motion to amend to add a Fourteenth Amendment substantive due process claim against Liebert as futile.

### i.      Punitive Damages

Moving Defendants contend that "to the extent the plaintiff claims punitive damages against [Warren] County, such damages cannot be legally pursued and such relief should be stricken from said Complaint." (Dkt. No. 47-1, at 13 (citing *Ciraolo v. City of New York*, 216 F.3d 236, 239–40 (2d Cir. 2000))). The Court agrees and dismisses any request for punitive damages against Warren County. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981) ([T]he deterrence rationale of § 1983 does not justify making punitive damages available against municipalities."); *Henry v. Cty. of Nassau*, No. 17-cv-06545, 2020 WL 1185283, at *12, 2020 U.S. Dist. LEXIS 43371, at *30 (E.D.N.Y. Mar. 12, 2020) ("[P]unitive damages are not recoverable from a municipality.").

### 2.      *Monell* claim

Plaintiff's Fourteenth Amendment substantive due process claim (First Claim) is brought against individual defendants as well as Warren County. (Dkt. No. 36-1, at 24). Plaintiff identifies numerous policies and/or practices that he alleges were the "moving and controlling force behind the violations of [his] constitutional rights," including "fabricating evidence against a parent in order to support a knowingly false referral for child abuse," "withholding exculpatory evidence," and "assigning DSS agents to friends and family members." (*Id.* ¶ 73(a)–(j)). The Second Amended Complaint's Second Claim also alleges *Monell* liability against Warren County, Cheshire County, and Hanchett, and describes how the alleged policies and/or practices led to the deprivation of his constitutional rights. (*Id.* ¶¶ 75–77).[16]

---

[16] Moving Defendants argue that Plaintiff's Second Claim is duplicative of his First Claim, insofar as both assert *Monell* claims against Warren County. The Court agrees, and construes Plaintiff as asserting one *Monell* claim against Warren County.

Moving Defendants offer arguments as to why the Fourteenth Amendment due process claims should be dismissed as to the individual defendants, see *supra* Section V.C.1, and if the Court had dismissed the claims against all the individual defendants, Plaintiff's *Monell* claim would fail as well. *See Aquino v. City of New York*, No. 16-cv-1577, 2017 WL 2223921, at *1, 2017 U.S. Dist. LEXIS 76402, at *2–3 (S.D.N.Y. May 19, 2017) ("It is well-established that a plaintiff must prove the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*."). However, given the Court has declined to dismiss the Fourteenth Amendment claims against Raymond and Hoerter, as well as claims against the supervisors who are alleged to have knowingly approved the social workers' fabricated reports, consistent with an alleged Warren County policy and practice of fabricating reports at this stage, and in light of the special solicitude afforded pro se plaintiffs, the Court grants Plaintiff's motion to amend to add a *Monell* claim against Warren County, and declines to dismiss this claim.[17]

However, the Court denies Plaintiff's motion to amend to add a *Monell* claim against Cheshire County as futile. The Second Amended Complaint asserts that Cheshire County officials "asked Warren Officials to abuse the process," (Dkt. No. 36-1, ¶ 24), but does not identify any specific municipal policy or custom that deprived him of a constitutional right. *See Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019) ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom."). Except in very rare cases, a "custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008).

---

[17] To the extent Plaintiff seeks to amend to add a *Monell* claim against Hanchett, it is duplicative of the *Monell* claim against Warren County and Plaintiff's motion to amend to add such a claim therefore denied as futile.

"The complaint is bereft of any detail about the nature of any suspect policies, practices, or procedures, much less how they caused" the violation of Plaintiff's rights. *Moore v. City of Norwalk*, No. 17-cv-695, 2018 WL 4568409, at *4, 2018 U.S. Dist. LEXIS 162782, at *9 (D. Conn. Sept. 24, 2018). Accordingly, Plaintiff's motion to amend to add a *Monell* claim against Cheshire County is denied as futile.

### 3.   Intentional and Negligent Infliction of Emotional Distress

Plaintiff moves to add intentional infliction of emotion distress ("IIED") and negligent infliction of emotional distress ("NIED") claims (Third Claim) in the Second Amended Complaint against Raymond, Lord, Colon, Breen, Cahill, and Hoerter. (Dkt. No. 36-1, at 29).

### a.   Notice of Claim

Moving Defendants contend that these claims should be dismissed because the Second Amended Complaint does not include "any allegation that a Notice of Claim was served upon Warren County or its employees within ninety (90) days of" the alleged infliction of emotional distress. (Dkt. No. 47-1, at 16). Plaintiff argues that "[t]he 'Notice of Claim' for [e]motional [d]istress was served within the applicable time limits . . . and Plaintiff was never served with a 'Disallowance Notice.'" (Dkt. No. 51, at 16).

"Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees." *Alexander v. City of Syracuse*, No. 17-cv-1195, 2018 WL 6591426, at *4, 2018 U.S. Dist. LEXIS 210687, at *11 (N.D.N.Y. Dec. 13, 2018) (quoting *Grant v. City of Syracuse*, No. 15-cv-445, 2017 WL 5564605, at *10, 2017 U.S. Dist. LEXIS 190763, at *24 (N.D.N.Y. Nov. 17, 2017)). It must include "the nature of the claim," and the purpose is "to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Fincher v. Cty. of Westchester*, 979 F.

Supp. 989, 1002 (S.D.N.Y. 1997). A plaintiff thus "may not raise in the complaint causes of action or legal theories that were not directly or indirectly mentioned in the notice of claim and that change in the nature of the earlier claim or assert a new one." *Rojas v. Hazzard*, 171 A.D.3d 820, 821 (2d Dep't 2019) (quoting *Gonzalez v. Povoski*, 149 A.D.3d 1472, 1474 (4th Dep't 2017)).

"A plaintiff must serve a notice of claim within ninety days after the claim arose before commencing a tort action against a municipality, its officers, agents, or employees." *Toliver v. City of New York*, No. 10-cv-3165, 2012 WL 7782720, at *7, 2012 U.S. Dist. LEXIS 187196, at *23 (S.D.N.Y. Dec. 10, 2012) (citing *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir.1999)), *report and recommendation adopted*, 2013 WL 1155293, 2013 U.S. Dist. LEXIS 39894 (S.D.N.Y. Mar. 21, 2013). "A plaintiff must plead in the complaint that: (1) the Notice of Claim was served; (2) at least thirty days have elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Id.* (quoting *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006)).

Here, the Court agrees with Moving Defendants that, while the Second Amended Complaint alleged that on "6/15/19 Plaintiff served notice of IIED/NIED to Warren County's Attorney Kissane," (Dkt. No. 36-1, ¶ 66), it failed to allege that 30 days elapsed between the Notice of Claim and the filing of the Second Amended Complaint, and that Moving Defendants had failed to satisfy the claim. These omissions, however, are insufficient to defeat Plaintiff's claim at this stage. Courts in this Circuit have declined to dismiss *pro se* plaintiffs' claims when they allege a Notice of Claim was timely filed "until the record is developed after discovery." *Toliver*, 2012 WL 7782720, at *8, 2012 U.S. Dist. LEXIS 187196, at *24 (declining to dismiss a

*pro se* plaintiff's claim before discovery where the timing of his Notices of Claim were unclear); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 348 (E.D.N.Y. 2003) (reconsidering a decision to dismiss based on failure to file a Notice of Claim when the *pro se* plaintiff indicated "substantial compliance with the notice of claim requirements" despite the complaint's failure to plead that she had "served the notices of claim").

      Here, in his response, Plaintiff states that the Notice of Claim was "served within the applicable time limits"—presumably 90 days from when the alleged tort occurred and more than 30 days before filing the Second Amended Complaint—and that he was "never served with a 'Disallowance Notice.'" (Dkt. No. 51, at 16). Given that these allegations are consistent with Plaintiff's allegation in the Second Amended Complaint that a Notice of Claim was served, the Court can consider them. *Harris*, 338 F. Supp. 3d at 187. Given Plaintiff's "*pro se* status and his allegations that he filed a timely notice of claim," the Court declines to dismiss Plaintiff's emotional distress claims at this stage on these grounds. *Toliver*, 2012 WL 7782720, at *8, 2012 U.S. Dist. LEXIS 187196, at *24.

      However, for Plaintiff's Notice of Claim to be timely, he would have had to serve it "within ninety days after the claim arose." *Toliver*, 2012 WL 7782720, at *7, 2012 U.S. Dist. LEXIS 187196, at *23. Given that he served it on June 15, 2019, this means that the alleged intentional or negligent infliction of emotional distress must have occurred on or after March 17, 2019. Accordingly, the Court only considers events that occurred after on or after March 17, 2019, when evaluating Plaintiff's intentional and negligent infliction of emotions distress claims.

### b.    Intentional Infliction of Emotional Distress

      Moving Defendants contend that Plaintiff's intentional infliction of emotion distress claims should be dismissed because, even assuming Plaintiff timely filed a Notice of Claim, the Second Amended Complaint fails to allege "specific conduct" of Moving Defendants that was so

"extreme and outrageous" that it transcends "the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." (Dkt. No. 47-1, at 17 (quoting *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 785 (3d Dep't. 1994)). Plaintiff responds that "[a]ny reasonable American citizen and parent" would find Moving Defendants' conduct of "fabricating [government] records while omitting exculpatory evidence" as "extreme." (Dkt. No. 51, at 17).

In New York, "a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). Conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society," *Stuto*, 164 F.3d at 827, and "[w]hether the alleged conduct is sufficiently outrageous enough to satisfy [this element] is a matter of law for a court to decide." *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 223 (E.D.N.Y. 2010).

The Court agrees with Moving Defendants that Plaintiff has not alleged conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency" in the relevant time period. *Stuto*, 164 F.3d at 827. By March 17, 2019, Plaintiff had regained full custody of his children. The Second Amended Complaint alleges that on March 21, 2019, Warren County DSS issued a false report against Plaintiff that led to two troopers doing a welfare check on his residence, in retaliation for the lawsuit. (Dkt. No. 36-1, ¶ 61). In response to this false report, social worker Chapman also inspected Plaintiff's residence and reviewed the

children's medical records. (*Id.* ¶¶ 62, 64). On April 26, 2019, Plaintiff received a "shocking letter" from Lord and Chapman that allegedly violated HIPAA and falsely alleged that IL "was not up to date on his 'wellness checkup.'" (*Id.* ¶ 65).

Plaintiff does not allege any conduct by Breen, Cahill, Colon, Hanchett, Hoerter, Kelly, Liebert, Matte, Raymond, or Vinson on or after March 17, 2019, and therefore Plaintiff's motion to amend to add intentional infliction of emotional distress claims against them is denied as futile. While Plaintiff alleges Lord "pressured" Chapman to send the letter to Plaintiff alleging that IL was not up to date on his "wellness checkup," (Dkt. No. 36-1, ¶ 65), this conduct is not sufficiently outrageous or extreme. *See Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 530 (S.D.N.Y. 2013) (The "'rigor of the outrageousness standard [for intentional infliction of emotional distress] is well-established,'" and the threshold is "exceedingly difficult to meet." (quoting *Mesa v. City of N.Y.*, No. 09-cv-10464, 2013 WL 31002, at *28, 2013 U.S. Dist. LEXIS 1097, at *85 (S.D.N.Y. Jan. 3, 2013))). Thus, the Court also denies Plaintiff's motion to amend to add intentional infliction of emotional distress claims against Lord and Chapman as futile.

### c.    Negligent Infliction of Emotional Distress

Like intentional infliction of emotional distress claims, negligent infliction of emotional distress claims "also require[] a showing of 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 400 (S.D.N.Y. 2007) (citing *Dillon v. City of New York*, 261 A.D.2d 34, 41 (1st Dep't 1999)). Plaintiff's negligent infliction of emotional distress fails for the same reason as his intentional infliction of emotional distress claims. Accordingly, the Court denies his motion to amend as to this claim as futile.

### 4.    Malicious Abuse of Process

#### a.    State Claim

Like the emotional distress claims, Moving Defendants argue that Plaintiff's malicious

abuse of process state claim (Fourth Claim) should be dismissed for failure to file a Notice of

Claim. (Dkt. No. 47-1, at 15). As discussed *supra* Section V.C.3.a, a plaintiff must "affirmatively

plead that they filed a notice of claim as required when bringing a tort claim against a

municipality or any of its officers, agents, or employees." *Perez v. Cty. of Nassau,* 294 F. Supp.

2d 386, 391 (E.D.N.Y. 2003). Although a plaintiff does not have to "state a precise cause of

action in *haec verba*" in order to satisfy the notice of claim requirement, *Rentas v. Ruffin*, 816

F.3d 214, 227 (2d Cir. 2016) (quoting *DeLeonibus v. Scognamillo*, N.Y.S.2d 285, 286 (2d Dep't

1992)), the notice must at least provide "the nature of the claim and the theory of liability" in

order for the claim to move forward. *Fincher*, 979 F. Supp. at 1003 (quoting *Wanczowski v. City

of New York*, 186 A.D.2d 397, 397 (1st Dep't 1992)).

While the Second Amended Complaint specifically alleges that Plaintiff "served notice of

IIED/NIED to Warren County's Attorney Kissane," (Dkt. No. 36-1, ¶ 66), it contains no

allegations that he served a Notice of Claim regarding his malicious abuse of process claim.

Plaintiff did not attach a copy of the emotional distress Notice of Claim and has provided no

specific facts that suggest that it included the nature of his abuse of process claim. Without more,

Plaintiff has failed to show that he substantially complied with the notice of claim requirements,

and thus the Court denies his motion to amend to add a state malicious abuse of process claim as

futile.

#### b.    Federal Claim

Plaintiff's Amended Complaint brought a § 1983 abuse of process claim, alleging that

Moving Defendants "intended to bring" Plaintiff's children "into dependency proceedings in

34

Warren County Family Court" in order to, inter alia, "record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments." (Dkt. No. 4, ¶ 482). That claim was dismissed, because it only alleged "in conclusory terms that the action of the Defendants in favor of the maternal grandmother were for a collateral purpose other than in support of her request for custody, which was the purpose of the Family Court proceeding." (Dkt. No. 7, at 21).

Moving Defendants argue that the Second Amended Complaint fails for the same reason—that the allegations "remain conclusory, are not specific to each defendant and do not set forth acts . . . which are 'collateral' in nature" from the purpose of "removing the children from the home." (Dkt. No. 47-1, at 19). Plaintiff argues that he had pled "three collateral motives," including: (1) "keeping Plaintiff tied up in perpetually extended litigation" to protect Defendants "from civil redress through Rooker-[F]eldman and Younger [a]bstention," (2) "intentionally inflicting emotional distress to break Plaintiff's will in the custody battle," and (3) "to keep the family in the dependency system and record the case as a positive outcome for the purposes of statistical analysis related to funding by the State and Federal governments." (Dkt. No. 51, at 17–18).

"Under New York law, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"[18] *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

---

[18] Courts "turn to state law to find the elements of the malicious abuse of process claim" brought under 42 U.S.C. § 1983. *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)

"The crux of a malicious abuse of process claim is the collateral objective element," *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 616 (E.D.N.Y. 2017) (quoting *Kraft v. City of New York*, 696 F. Supp. 2d 403, 416 (S.D.N.Y. 2010), *aff'd*, 441 Fed. Appx. 24 (2d Cir. 2011)), and "a plaintiff must plausibly plead not that defendant acted with an 'improper motive,' but rather an 'improper purpose': '[A plaintiff] must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his . . . prosecution." *Id.* (quoting *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003)); *see also Hoyos v. City of New York*, 999 F. Supp. 2d 375, 391 (E.D.N.Y. 2013) ("A malicious abuse of process claim thus requires an ulterior purpose such as the infliction of economic harm, extortion, blackmail, or retribution."). "For example, tampering with evidence is not considered abuse of process because the goal—convicting the defendant—is a legitimate use of process." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009).

Although the Moving Defendants did not raise this issue in their brief, it would appear that an amendment adding a § 1983 malicious prosecution claim would be futile because § 1983 liability may "'not be predicated on a claim of malicious abuse of' . . . *civil* process," *Cook*, 41 F.3d at 79–80 (quoting *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)); *see also Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (holding the district court did not abuse its discretion in denying a motion to amend for futility when the plaintiff aimed to bring a § 1983 abuse of process claim based on family court proceedings). Even assuming that Plaintiff can bring a § 1983 abuse of process claim based on a non-criminal proceeding, the Second Amended Complaint nonetheless fails to state a claim. The allegations that Moving Defendants engaged in this process to "break Plaintiff's will" and "record the case as a positive outcome" for statistical purposes to obtain more funding are entirely speculative and unsupported by any facts—

accordingly, they fail to allow a plausible inference that Moving Defendants had a collateral objective. Similarly, Plaintiff asserts that Moving Defendants "prejudice[ed] the [Family] [C]ourt records" in order to avoid civil liability for their conduct, but this assertion is vague and, without additional facts, does not allow a plausible inference of collateral purpose. Accordingly, the Court denies as futile Plaintiff's motion to amend to add a § 1983 abuse of process claim.

### 5.       Fourth Amendment Claim

Plaintiff alleges Raymond violated his Fourth Amendment rights (Fifth Claim) when she "entered the LeClair residence deliberately against the Plaintiff and his wife's commands." (Dkt. No. 36-1, ¶ 53). Moving Defendants contend that this claim should be dismissed because the Second Amended Complaint "fail[ed] to correct the repeated pleading deficiencies noted by the Court in its Report Recommendation," but moving Defendants do not identify any specific pleading deficiency.[19] (Dkt. No. 47-1, at 20). The Court finds that Plaintiff's allegations related to his Fourth Amendment claim "give fair notice of [his] claim[]," fulfilling the "function of pleadings under the Federal Rules." *Simmons*, 49 F.3d at 86 (2d Cir. 1995) (citations and internal quotation marks omitted); *see supra* Section V.B. Accordingly, the Court declines to dismiss this claim.

### 6.       First Amendment Retaliation

In the Second Amended Complaint, Plaintiff seeks to add a First Amendment retaliation claim (Sixth Claim) against Breen, Hanchett, Lord and Warren County. (Dkt. No. 36-1, ¶ 86). Moving Defendants oppose the motion on the ground that such a claim is futile. (Dkt. No. 47-1, at 20–23).

---

[19] The Report-Recommendation found that these allegations were "sufficient to warrant a response." *Leclair I*, 2019 WL 1300547, at *9, 2019 U.S. Dist. LEXIS 46812, at *25.

"In order for a private citizen to state a claim for First Amendment retaliation against a public official, he must plead and prove: (1) he engaged in speech protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) there was a resultant and 'actual chill[ing]' of his exercise of that constitutional right." *Rathbun v. DiLorenzo*, 438 F. App'x 48, 49 (2d Cir. 2011) (summary order) (citing *Curley v. Vill of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Plaintiff alleges Breen, Lord, Warren County, and Hanchett violated his First Amendment rights by retaliating against him in response to this lawsuit. (Dkt. No. 36-1, at 33–34). Defendants concede, for purposes of this motion, that Plaintiff's filing of this action is protected conduct under the First Amendment. (Dkt. No. 47-1, at 21). Plaintiff alleges several acts of retaliation, including that: (1) DSS "fabricated" a report—leading to two troopers arriving at his house to do a "welfare check" on March 21, 2019, and a trooper and social worker doing a follow up visit the next day, (Dkt. No. 36-1, ¶¶ 61–62); (2) he was sent a letter, signed by Lord, falsely stating that IL was not up to date on his "wellness checkup," (*id.* ¶ 65); (3) Family Court Judge Wait "altered" Whipple's *pro se* motions "to not be hers," (*id.* ¶ 63); and (4) the Family Court rescheduled hearings in order to make Plaintiff's children miss their doctors visit, to "make all 3 kids appear medically neglected." (*Id.* ¶ 63).

Moving Defendants argue that Plaintiff's First Amendment retaliation claim should be dismissed because Plaintiff failed "to allege any specific action whatsoever on the part of defendants Breen and Lord" and "with respect to Warren County itself, the allegations are conclusory and do not plead a *Monell* claim." (Dkt. No. 47-1, at 20). Plaintiff contends that "Lord attempted to frame Plaintiff for medical neglect," and that for the fabricated report, "Breen and Hanchett as policy makers are naturally in collusion with Lord responsible for th[e] Warren County retaliation." (Dkt. No. 51, at 19).

### a.      Breen and Hanchett

Plaintiff has failed to sufficiently allege Breen and Hanchett's personal involvement. As discussed *supra* Section V.C.1.d, it is necessary to show a supervisor's personal involvement in the alleged constitutional deprivations in order to obtain relief under § 1983, which as discussed, can be alleged in several different ways. *Wright*, 21 F.3d at 501; *Colon*, 58 F.3d at 873.

In terms of direct participation, Plaintiff does not allege that Breen or Hanchett participated in the fabricated report, letter, or Family Court proceedings. (*See* Dkt. No. 36-1, ¶¶ 61–65). While the Second Amended Complaint alleges that "Warren County DSS began a false report" and that this report was "fabricated by DSS," (Dkt. No. 36-1, ¶¶ 61–62), without more, these claims are insufficient to allege Breen or Hanchett's direct participation. While Plaintiff argues that "Breen and Hanchett as policy makers are naturally in collusion with Lord [and] responsible for this Warren County retaliation," (Dkt. No. 51, at 19), this allegation is too conclusory and vague to adequately allege direct participation or any of the other *Colon* factors. 58 F.3d at 873. *See Perez v. Ponte*, 236 F. Supp. 3d 590, 611 (E.D.N.Y. 2017) ("Even construing these statements liberally, as the Court is required to do when reviewing a Complaint filed by a *pro se* litigant, there are simply no factual allegations asserted which support a finding that [the defendant] was personally involved in any of the incidents at issue." (citation omitted)), *report and recommendation adopted*, No. 16-cv-645, 2017 WL 1050109, 2017 U.S. Dist. LEXIS 38775 (E.D.N.Y. Mar. 15, 2017). Accordingly, the Court denies as futile Plaintiff's motion to amend to add First Amendment retaliation claims against Breen and Hanchett.

### b.      Lord

Unlike Breen, the Second Amended Complaint alleges that Lord was personally involved in the letter that was sent to Plaintiff informing him that IL was due for a wellness checkup. (Dkt. No. 36-1, ¶ 65). Specifically, it alleges that Lord "pressured" Chapman to "fabricate[] a medical

neglect allegation" by "falsely indicat[ing]" that "IL was not up to date on his 'wellness checkup.'" (*Id.*). This letter was sent in connection to the allegedly fabricated CPS report initiated on March 21, 2019. (*Id.* ¶ 66). Thus, Moving Defendants' contention that Plaintiff failed "to allege any specific action whatsoever on the part of . . . Lord" is unavailing. (Dkt. No. 47-1, at 20).

Alternatively, Moving Defendants argue that Plaintiff failed to allege the second and third necessary elements of a First Amendment retaliation claim. (*Id.* at 21). They argue that Plaintiff's allegations that "the defendants' actions were motivated or substantially created by his exercise of his First Amendment right" are bald and conclusory. (*Id.* (citing *Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004))). To "survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated in 'wholly conclusory terms.'" *Dapolito*, 297 F. Supp. 2d at 692 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000)). However, "[t]he ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint," and thus "it is sufficient to allege facts from which a retaliatory intent on the part of defendants reasonably may be inferred." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir. 1994). Here, Plaintiff alleges that on the day that Magistrate Judge Stewart issued his Report-Recommendation and Moving Defendants were electronically served, DSS fabricated a report stating that Plaintiff's home was "deplorable, covered in animal feces and urine everywhere," that Plaintiff was "mentally ill," and that he was allowing his "children to play with or around animal excrement." (Dkt. No. 36-1, ¶¶ 61–62). However, this allegation is not consistent with the record. While Magistrate Judge Stewart's Report-Recommendation was issued on March 21, 2019, Moving Defendants were not served until after Plaintiff filed a motion for a temporary

restraining order on June 27, 2019, (Dkt. No. 10), and the Court adopted the Report-Recommendation on July 1, 2019. (Dkt. No. 12). The record thus reflects that Moving Defendants were not served until July 2019. (Dkt. Nos. 15–24). Absent facts from which to infer DSS, or any Defendant, had knowledge of this action on March 21, 2019, there is no basis on which to infer that any report DSS prepared on March 21, 2019, was in retaliation for this action. Given Plaintiff has not alleged any other facts from which retaliatory intent could reasonably be inferred, the Court denies as futile Plaintiff's motion to amend to add a First Amendment retaliation claim against Lord.

### c.        Warren County

A municipality "cannot be held liable under *Monell* in the absence of a constitutional violation by" a government employee. *Aquino*, 2017 WL 2223921, at *2, 2017 U.S. Dist. LEXIS 76402, at *6; *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."). Given that Plaintiff has failed to adequately allege a constitutional violation by Breen, Hanchett, or Lord, *see supra* Sections V.C.6(a)–(b), his motion to amend to add a First Amendment retaliation *Monell* claim against Warren County is denied as futile.

### 7.        Fourteenth Amendment Procedural Due Process

The Second Amended Complaint brings a Fourteenth Amendment Procedural Due Process claim (Seventh Claim) against Cheshire County, based on the allegation that "Plaintiff had a [p]rocedural right to see a Judge within 48 hours," and was denied this right when he was held in custody for five days. (Dkt. No. 36-1, ¶ 89). However, as discussed *supra* Section V.C.2, "[t]o establish liability under *Monell*, a plaintiff must show that he suffered the denial of a

constitutional right that was caused by an official municipal policy or custom." *Bellamy*, 914

F.3d at 756. Here, even assuming Plaintiff's procedural due process rights were violated, the

Second Amended Complaint fails to allege any specific municipal policy or custom caused the

deprivation of his rights. Accordingly, his motion to amend to add a procedural due process

claim against Cheshire County is denied as futile.

### 8.    Federal Mail Protections

The Second Amended Complaint adds a cause of action (Eighth Claim) against Matte for

violating § 1708 of title 18 of the United States Code for "[i]ntentionally obstructing service of

Court Summons" from New Hampshire, "which his client Ferguson stole, withheld and gave"

him. (Dkt. No. 36-1, ¶ 90). "This provision, however, is a criminal statute, and it does not appear

that Congress intended to create a private, civil cause of action based on its violation."

*McFarlane v. Roberta*, 891 F. Supp. 2d 275, 285 (D. Conn. 2012) (collecting cases).

Accordingly, Plaintiff's motion to amend to bring this cause of action is denied as futile.

### D.    Personal Identifiers

The proposed Second Amended Complaint, (Dkt. No. 36-1), and its attachments, appear

to contain personal identifiers prohibited the Northern District of New York's Local Rule 8.1(a),

including individuals' dates of birth and the names of minor children. Plaintiff is directed to

redact all dates of birth and the names of minor children from the proposed Second Amended

Complaint and its attachments and resubmit it by two weeks from the date of this Order.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 47) is **GRANTED in part**;

and it is further

**ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 47) is **GRANTED** as to

Plaintiff's claim against Warren County for punitive damages, and this claim is **DISMISSED with prejudice**; and it is further

ORDERED that Defendants' Motion to Dismiss (Dkt. No. 47) is **GRANTED** as to Plaintiff's Fourteenth Amendment substantive due process claims against Colon and Cahill and these claims are **DISMISSED**; and it is further

ORDERED that Defendants' Motion to Dismiss (Dkt. No. 47) is otherwise **DENIED**; and it is further

ORDERED that Plaintiff's Motion to Amend (Dkt. No. 36) is **GRANTED in part**; and it is further

ORDERED that Plaintiff's Motion to Amend (Dkt. No. 36) is **GRANTED** as to his Fourteenth Amendment substantive due process claims against Breen, Hoerter, Lord, Raymond, and the related *Monell* claim against Warren County, and as to Plaintiff's Fourth Amendment claim against Raymond; and it is further

ORDERED that Plaintiff's Motion to Amend (Dkt. No. 36) is otherwise **DENIED**; and it is further

ORDERED that the Clerk of the Court terminate defendants Cahill and Colon; and it is further

ORDERED that Plaintiff redact all dates of birth and the names of minor children from the Second Amended Complaint and its attachments and resubmit it within fourteen (14) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 25, 2020
         Syracuse, New York

Brenda K. Sannes
U.S. District Judge

43