**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NICHOLAS LECLAIR,

                     Plaintiff,

                                          1:19-CV-0028
     -v-                                      (BKS/DJS)

SARAH RAYMOND, *et al.*,

                     Defendants.

**APPEARANCES:**                             **OF COUNSEL:**

NICHOLAS LECLAIR
Plaintiff, *Pro Se*
Oil City, PA 16301

MURPHY BURNS LLP                STEPHEN M. GROUDINE,
Attorneys for Defendants Raymond,     ESQ.
Breen, Lord, Hoerter, and Warren County
407 Albany Shaker Road
Loudonville, NY 12211

**DANIEL J. STEWART**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION and ORDER

## I.  INTRODUCTION

Presently pending before the Court are numerous Motions relating to discovery disputes, discovery deadlines, alleged spoliation of evidence, and a proposed Third Amended Complaint.  Dkt. Nos. 66, 81, 97, 98, 100, 102, 103, 107, 108, 117, 129, & 134.

An on-the-record telephone conference was held on December 16, 2020, at which time the *pro se* Plaintiff and counsel for the Defendants were both provided an opportunity to address the merits of all the outstanding issues. Dkt. No. 147, Transcript. At the end of the conference the Court indicated it would issue a written ruling on the pending Motions, and the following represents that omnibus Decision.

## II. PROCEDURAL HISTORY[1]

This civil rights case was commenced on January 7, 2019. Dkt. No. 1. Shortly thereafter the *pro se* Plaintiff filed an Amended Complaint as of right. Dkt. No. 4. Plaintiff requested to proceed *in forma pauperis*, so this Court then conducted an initial review in which, applying a lenient standard, it allowed certain aspects of the case to proceed. In particular, three of Plaintiff's claims were allowed: (1) a claim that Defendant Sarah Raymond violated Plaintiff's due process rights by presenting false and fraudulent evidence during a Warren County Family Court custody proceeding, which proceeding began with a February 13, 2018 petition on consent, and a March 14, 2018 Family Court Order granting physical and legal custody of Plaintiff's two children to the children's grandmother, and which ended when the Family Court issued a Final Order of Custody in favor of Plaintiff and his wife on or about October 9, 2018; (2) a claim against Warren County and certain named Social Service Supervisors premised upon a theory of supervisory liability and/or a *Monell* "policy or custom" argument; and (3) a Fourth

---

[1] A detailed factual recitation of this case is contained in the District Court's extensive August 25, 2020 Memorandum-Decision and Order. Dkt. No. 73.

Amendment claim that, on a specific date in August, 2019, Warren County Social Services Case Worker Sarah Raymond illegally entered Plaintiff's apartment.  Dkt. No. 7.  That Report and Recommendation was adopted by United States District Court Judge Brenda Sannes on July 1, 2019.  Dkt. No. 12.  Thereafter, the District Court granted Plaintiff another opportunity to amend and to serve a Second Amended Complaint.  Dkt. No. 73.  The amendment was limited to adding or clarifying Plaintiff's Due Process claim against Defendants Raymond, Hoerter, Lord, Breen, and Warren County.  *Id*.  The Second Amended Complaint was filed on the docket on August 27, 2020.  Dkt. No. 75.  In considering the outstanding discovery disputes as well as the Motion to Amend, it is critical to note that, despite Plaintiff's long-running dispute with both the Warren County Family Court and the Warren County Social Services Department, only these claims as outlined in the Court's review of the Complaint remain before the Court.

### III.  DISCOVERY ISSUES

Several discovery issues were raised at the recent conference or were referenced in the Letter-Motions that are presently pending.  Initially, in July of this year Plaintiff asked for permission to serve additional interrogatories in excess of the number authorized by the Federal Rules and justified the request based on his financial inability to conduct depositions of the Defendants.  Dkt. No. 66.  The Court indicated a willingness to consider that request, but directed that the proposed additional interrogatories be sent to the Court for review *prior* to their service upon defense counsel. Dkt. No. 74, Text

Order dated August 26, 2020.  Plaintiff never submitted the proposed interrogatories to the Court for review and discovery has now closed.  Accordingly, Plaintiff's request for additional interrogatories is denied as moot.

Next, Defendants' counsel has objected to certain additional discovery demands propounded by Plaintiff and served on December 4, 2020, approximately four days after the expiration of the November 30, 2020 discovery deadline.  Dkt. No. 117.  For those demands to have been timely they should have been served by the end of October 2020. *See* N.D.N.Y. L.R. 16.2; Fed. R. Civ. P. 34(b)(2)(A).  Accordingly, Defendants' Letter-Motion to strike Plaintiff's demands is granted.  In the same letter, defense counsel has also requested an order compelling Plaintiff to respond to certain supplemental document demands which the Defendants served on October 30, 2020. *Id*.  As those demands were timely under the rules, the Defendants' Letter-Motion is hereby granted, without costs. In the event that he has not done so already, Plaintiff is directed to respond to the October 30, 2020 discovery demands within fourteen days of the date of this decision.  The parties and counsel are once again reminded of their obligation to supplement their Rule 26 initial disclosures and their discovery responses, as warranted.

Finally, to the extent that Plaintiff requests a further extension of discovery, issuance of subpoenas to conduct further fact gathering after the discovery deadline, or

an order requiring Defendants to comply with state FOIL requirements,[2] Dkt. Nos. 115, 119, 129, & 134, those requests are denied.

## IV.  SPOLIATION

Plaintiff has requested sanctions for what he claims is the production of falsified or altered documents by Defendants and their counsel, as well as the abject failure to produce certain documents.  Dkt. Nos. 102, 107, & 111.  Plaintiff states in general terms that "hundreds of documents have been concealed by Defendants," Dkt. No. 102 at p. 6, but it is not entirely clear to the Court what those specific documents are as they have not been identified with any particularity.   As a result of the recently held telephone conference, however, it appears that the documents fall into a few specific categories: missing photographs; allegedly altered and withheld records of home visits; and falsified DSS records, believed to be contained in Dkt. No. 101.  *See* Transcript at pp. 12-23.

### A.  Standard

The Court concludes that the allegations contained in Plaintiff's Motion fall under the general category of spoliation of evidence.  "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  As for the legal standard to be employed, a party seeking

---

[2]  The Court notes that FOIL specifically provides that individuals seeking the release of records under FOIL, or appealing denials thereof, must submit "written request[s]" to the relevant State entity.  N.Y. Pub. Off. Law § 89(3)(a) - (4)(a).  A person denied access may bring an Article 78 proceeding in state court.  *Id*. at (4)(b).

sanctions based on the destruction or falsification of evidence must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001)).  "The party seeking sanctions bears the burden of establishing all elements of a claim for spoliation of evidence." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008).  Moreover, pursuant to Rule 37(d) and 7.1(d) of the Local Rules of the Northern District of New York, a motion for sanctions must include a certification that the movant has in good faith conferred with the opposing party in an effort to obtain the answer or response without the need for court action.

## B.  Missing Photographs

First, Plaintiff maintains that photographs of a July 3rd groin injury sustained by his child were taken by Social Services Case Worker Sarah Raymond, but that when they were demanded during discovery in this case, Defendants responded that they did not have any such photos.  Transcript at pp. 19-21.  During the course of the recently held telephone conference, and thereafter, defense counsel clarified that the caseworker had in fact taken photographs of the child as part of a third-party investigation which was

ultimately determined to be unsubstantiated.  Transcript at pp. 21-24; Dkt. No. 133.
However, counsel's further investigation revealed that those photographs were not saved
to a compact disc, printed, or scanned.  Dkt. No. 133.  If they had been downloaded to
her work computer, the caseworker has since changed computers and the photos were
never transferred to the new computer.  *Id.*  The photos were deleted from the Social
Services Worker's camera after the investigation was determined to be unfounded.  *Id.*
Plaintiff, for his part, believes that there are, or should be, additional copies of the photos
in question.  Transcript at pp. 19-21.

Having considered the elements necessary for a finding of spoliation, the Court
concludes that Plaintiff has not satisfied his burden of proof in relation to the issue of the
missing photographs of his child.  Plaintiff has not established that the failure to preserve
these photographs was in anyway intentional, vexatious, or done in bad faith.  The photos
in question related not to claims against Plaintiff, but rather to a third-party investigation
that had been closed long before the present action was filed.  The fact that the photos
were not maintained, while possibly unfortunate, is not the basis for any sanction.
Plaintiff asserts that the Defendants have the photos and are simply refusing to turn them
over, but defense counsel indicates on the record to the Court that a comprehensive search
has been made and the photos have not been found.  The Court credits this explanation.
It is evident to the Court that Plaintiff has not met his burden to show misconduct on the
part of the Defendants.

In addition to the foregoing, it is not at all clear that the photos in question have any relevance to the present lawsuit. As explained as part of the March 2019 Report-Recommendation and Order, and reiterated during the course of the recently held telephone conference, this case does not involve an inquiry into the reasonableness of Warren County Social Services' investigation into claims of alleged abuse by a third party or parties on Plaintiff's child. The third party in question is not a state actor, and there is no constitutional duty on the part of a social services department to conduct any investigation into it, negligent or otherwise. *See LeClair v. Vinson*, 2019 WL 1300547, at *8 (N.D.N.Y. Mar. 21, 2019).

### C. Home Visit Records

The next area of dispute involves certain records of home visits that Plaintiff maintains have been altered by the Warren County Defendants. As noted above, one of the remaining claims is that, on a single occasion, Defendant Raymond entered Plaintiff's residence in violation of the Fourth Amendment. At the recent telephone conference, Plaintiff further explained that his wife had revoked her consent to have CSW Raymond enter the residence on this occasion, and therefore her conduct in doing so is said to have constituted an unreasonable search. Transcript at p. 15. Because the Court perceived that there was some confusion as to the exact date in August of 2019 that this alleged illegal entry occurred, the Court previously agreed to review, *in camera,* records relating to home visits or checks on Plaintiff's residence during a specific period both before and after the

suspected entry date in August. *See* Text Minute Entry dated October 9, 2020. The Court reviewed the records *in camera* because the visits related to a third-party investigation that was determined to be unfounded and therefore records relating to the investigation would have been sealed under state law. N.Y. Comp. Codes R. & Regs. tit. 18, § 432.9. Nevertheless, after review, the Court directed disclosure of the records to Plaintiff. Dkt. No. 95.

Plaintiff now maintains that the Defendants have not responded truthfully in providing records of all unannounced home visits by Defendant Raymond. Dkt. No. 102 at pp. 14-15. In addition, Plaintiff notes that the bates stamped disclosures do not resemble documents previously disclosed in discovery, and he believes that they have been altered by the Defendants, and, in support of this, points to the fact that an August 27, 2020 date is included in the records. Transcript at pp. 13-14; Dkt. Nos. 102 & 107-1.

Defense counsel responds that there was no alteration or falsification of any of the documents. Dkt. No. 110 at p. 2; Transcript at pp. 17-18. Counsel notes that the docketing system utilized by social workers in New York State, "Connections," is designed to prevent any entry into the system from being altered or deleted outside of 20 days from the initial recording date. *Id*. Further, the Connections system is not maintained by Warren County or its officials. *Id*. He explains that the date of August 27, 2020 on the records is merely a reference to the print date. *Id*. Regarding the interrogatory responses, Defendants acknowledge an error in their initial response in

connection with one home visit that was labeled as a telephone visit and therefore have amended their responses.   Transcript at p. 18.   Plaintiff is not satisfied with this explanation, and requests the Court retain its own expert to review the electronic database. *Id*. at p. 19; Dkt. Nos. 102 & 107.

Upon review of Plaintiff's claims of Defendants' falsification of home visit records, the Court once again concludes that Plaintiff has failed to establish the necessary elements for the imposition of a spoliation sanction.   The fact that the printout date is for August 2020, or that the printout is different from what was provided to Plaintiff by Defendants in their discovery responses, is not sufficient to establish the required destruction or alteration.  *See Oliver v. New York State Police*, 2019 WL 1915215, at *5 (N.D.N.Y. Apr. 30, 2019) ("[T]he Court concludes that the best evidence indicates that the date issue is caused by a computer function, and not by any misconduct of the Defendants or counsel.").   The Defendants turned over precisely what the Court directed them to turn over.   Further, the Defendants' correction of a previous interrogatory response to add the date of another unannounced home visit is nothing more than Defendants' recognition and fulfillment of their obligation to supplement their responses when they discover new information.[3]

---

[3] Rule 26(e)(1) of the Federal Rules of Civil Procedure provides that a litigant "must supplement or correct its disclosure or response [ ] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Relevance is a significant issue here as well.  The parties have confirmed to the Court that what is at issue in Plaintiff's third claim is a single incident that occurred on two potential dates in August:  August 3rd or August 14th.  Transcript at pp. 14-15.  Therefore, home visits or welfare checks that occurred before or after that singular incident have little if any relevance to this claim.  Insofar as Plaintiff wants to utilize these unannounced home visits to criticize the methods of Warren County Social Services' investigation into a claim of abuse by a third party, that is once again outside the legitimate bounds of discovery in this case.[4]

### D.  Social Services Records

Finally, Plaintiff points to a series of alleged falsifications and/or lies connected with the Social Services records and the Family Court proceedings.  *See* Dkt. Nos. 101 & 102 at p. 11 ("These DSS Defendants fabricated governmental records to make the Plaintiff and wife appear as 'not competent', 'mentally ill' and as an 'immediate danger to their children'").  Many of these allegations are contained in the proposed Third Amended Complaint, and relate, among other things, to conduct that occurred in New Hampshire and information provided by the grandmother of Plaintiff's children. Dkt. No. 98 at ¶¶ 22-63.  According to Plaintiff, all this information was put in the Warren County

---

[4]  The Court also declines to appoint a computer expert to review the Connections system.  While Federal Rule of Evidence 706 does provide the Court with the authority to do so, that authority is utilized sparingly.  *See Benitez v. Mailloux*, 2007 WL 836873, at *2 (N.D.N.Y. Mar. 15, 2007).  Plaintiff's rank speculation of some skullduggery, together with the limited relevance of the issue, leads the Court to conclude that the appointment of an expert is unnecessary.

Social Services records, to which the Warren County Family Court did or may have had access.  Transcript at pp. 31-33.

As to the events in New Hampshire, Plaintiff alleges that he was wrongfully arrested on January 12, 2018 based upon a fabricated affidavit of a New Hampshire police officer who indicated that Plaintiff was homeless; that he and his family, including his two children, were living out of their automobile; and that the family had repeatedly refused assistance.  Dkt. No. 98 at ¶¶ 22-26; Dkt. No. 101 at p. 28.  Plaintiff's children were then placed in foster care by New Hampshire officials.  Dkt. No. 98 at ¶ 24.  Plaintiff was released the day of his arrest, and the Family Court proceeding was transferred to Warren County, New York, where the grandmother was awarded Article 6 custody, and then the parents relocated back to the Upstate area to live with that grandmother.  Dkt. No. 101 at p. 9.

Plaintiff and his wife at all times deny that they were homeless while in New Hampshire or that they in any way neglected their children.  *See* Dkt. No. 98, *generally*; Dkt. No. 101 at p. 36.  Nevertheless, the allegations of inadequate guardianship, inadequate food, clothing, and shelter, and lack of medical care were "substantiated." Dkt. No. 101 at p. 29; Dkt. No. 98 at ¶¶ 30-31.  As part of her March 1, 2018 note, Defendant Raymond recorded that the children were reported to be malnourished and slightly underweight when New Hampshire officials placed them in foster care.  *Id*. at p. 25.  The children also reportedly had not been seen by a doctor since birth, which is an

allegation that Plaintiff notes that he can disprove through medical records. *Id.* at p. 29; Transcript at pp. 26-27.

With regard to Plaintiff's mental health, the March 1, 2018 Warren County DSS note indicates that Plaintiff was observed to be controlling; that he was involved in drug deals and had been shot in 2012; and that he believed the FBI was out to get him and had planted a "tracker chip" in him. Dkt. No. 101 at pp. 25-26. It appears that this information was provided by the children's grandmother directly to the Social Worker, Sarah Raymond. *Id*. at pp. 26-27.

Plaintiff denies all of these allegations. He notes that he was seen for psychological evaluation at the request of the Warren County Family Court, and that the evaluation noted "Nick presents as a normally adjusted individual with adequate parenting skills" and "there was no indication that Nick has any serious mental disorder." Dkt. No. 98 at ¶ 31; Dkt. No. 101 at pp. 39-41.

In the Court's view, Plaintiff has failed to present sufficient proof on his claim of spoliation of evidence regarding the content of the Family Court or Social Services records. First, it appears that many of the notations are not falsifications or alterations at all, but merely reports by third parties or conclusions or impressions of the social worker with which Plaintiff vehemently disagrees. *Compare Frost v. New York City Police Dep't*, 980 F.3d 231, 247 (2d Cir. 2020) (witness statement that he was pressured to identify suspect as the shooter after he had previously indicated he could not make such

an identification was sufficient to oppose summary judgment motion on due process claim based upon fabrication of evidence), *with Walker v. City of New York*, 621 Fed. Appx. 74, 76 (2d Cir. 2015) ("We agree with the district court that the record is devoid of evidence that Defendants perjured themselves or manufactured false evidence. None of the alleged misstatements or inconsistencies identified by Plaintiffs rises to the level of a due process violation.") *and Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010) ("[T]his Court has found no constitutional violation where caseworkers allegedly committed 'sins of commission and omission in what they told and failed to tell . . . the Family Court Judge.'") (quoting *van Emrik v. Chemung Cty. Dep't of Soc. Servs*., 911 F.2d 863, 866 (2d Cir. 1990)).  The fact that a third party may be in error, or even intentionally lied, when he or she reported a claim that Plaintiff and his family were living out of their automobile in New Hampshire, or that Plaintiff believed a tracking chip had been implanted in his body by the government, does not mean that the social worker falsified a record, so long as he or she accurately reported these claims, disputed as they may be.  The Court also notes that the Social Service Records provided by Plaintiff also include notations of Plaintiff and his wife denying various allegations, as well as other information favorable to Plaintiff.  *See* Dkt. No. 101 at p. 9 (parents denying living out of a vehicle), p. 30 (social service worker noting that child "gravitated to his father, who was affectionate and appropriate with him"), p. 41 (Psychological Evaluation dated April 15, 2018 finding "It is the conclusion of this evaluation that both Emily and Nicholas show

adjustment within the normal range and adequate parenting skills."), p. 42 (noting no concerns during home visit).

Plaintiff's concerns that Warren County Social Services negligently investigated his relationship with his children, or his parenting skills, or his mental health, and should have discovered sooner that what was reported to the case worker was not in fact true, are not part of his section 1983 claim. *Daniels v. Williams*, 474 U.S. 327, 333 (1986) ("[I]njuries inflicted by governmental negligence are not addressed by the United States Constitution. . . .").

Setting aside this argument, and on a more basic level, insofar as there is a supportable claim that a named Defendant did in fact manufacture false evidence and presented it to the Family Court, which presentation materially affected the outcome of the custody decision, that fact is part of Plaintiff's substantive claim to be proven at trial, and is not a discovery-related issue for this Court to resolve. Certainly, Plaintiff will be given the opportunity to utilize at any trial all the Social Services Records supplied during discovery, provided that the Trial Court Judge concludes that the records are relevant to the claims still at issue.

Accordingly, Plaintiff's request for sanctions for spoliation of evidence is hereby denied.

## V.  MOTION TO SUBMIT A THIRD AMENDED COMPLAINT

As noted in the procedural history of this case, Plaintiff has already filed a Complaint, an Amended Complaint, and a Second Amended Complaint.  At the very end of discovery, Plaintiff now seeks permission to file a Third Amended Complaint, which adds his two children as additional Plaintiffs, and adds ten new Defendants and several additional claims, some of which have already been considered and dismissed.  For the reasons that follow, Plaintiff's request to further amend the Complaint is denied.

Federal Rule of Civil Procedure 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires."  *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006); *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).  Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996)).

"However, 'if the motion to amend is filed after the deadline imposed by the district court in its scheduling order,' the plaintiff must also show 'good cause.'"  *Min Gui Ni v. Bat-Yam Food Servs., Inc.*, 2014 WL 3810820, at *2 (S.D.N.Y. July 30, 2014) (citing *Werking v. Andrews*, 526 Fed. Appx. 94, 96 (2d Cir. 2013)).  "In order to show good cause, the moving party must demonstrate that, despite having exercised diligence

16

in its efforts to adhere to the court's scheduling order, the applicable deadline to amend could not reasonably have been met." *Id.* (internal quotation marks and citations omitted); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("We now join these [circuit] courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.  Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party.").  District courts are vested with broad discretion to grant a party leave to amend the pleadings.  *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 345 (2d Cir. 2004).

In the present case a careful review of the factors outlined above warrants the conclusion that a further amendment of Plaintiff's Complaint should not be allowed.  As an initial matter, the present Motion is clearly untimely.  The deadline to amend was set by the Court for November 15, 2019, Dkt. No. 46, and the present Motion to Amend was not filed until 11 months after the expiration of that deadline, Dkt. No. 97.  No compelling reason for the failure to comply with the scheduling order has been presented by Plaintiff.  Plaintiff notes that much of the proposed Third Amended Complaint relates to documents or records that were provided during the discovery process, and that production was delayed by the Defendants.  While Defendants' delay in providing discovery was

inappropriate,[5] many of the claims and theories now sought to be asserted, or re-asserted, were long known to Plaintiff.  Indeed, nearly all of Plaintiff's claims contained in the Proposed Third Amended Complaint are contained in the Second Amended Complaint, except for Plaintiff's HIPAA claim and his effective access to courts claim based upon alleged wrongdoing during discovery in this case.  *Compare* Dkt. No. 98 with Dkt. No. 75.

Certainly, Plaintiff was aware of the procedure for filing a motion to amend, as he had done so on two prior occasions.  Further, his inability to correct the Complaint on his previous attempts is itself a reason for denying any further amendment.  *See*, *e.g.*, *Palacio v. City of New York*, 489 F.Supp.2d 335, 343 (S.D.N.Y. 2007) (denying plaintiff *pro se* leave to amend his complaint for a third time when "plaintiff has already had two chances to amend with specific instructions . . . on how to properly do so").

The discovery deadline in this case, which has been pending for two years, closed on November 30, 2020.  *See* Text Minute Entry dated May 29, 2020.  In addition, both sides have filed dispositive or partially dispositive Motions.  Dkt. Nos. 131 & 139.  To grant this proposed amendment, which adds new Plaintiffs, new Defendants, and new claims, and which would require the addition of new counsel and a new discovery order,

---

[5] Defense counsel noted in his letter to Plaintiff that the Defendants would provide discovery only when Plaintiff himself provided his responses to outstanding demands.  Dkt. No. 104 at ¶ 19.  This is not an authorized approach.  "Discovery is not equity: one party's noncompliance with discovery requirements does not excuse the other's failure to comply. Each party's obligation is independent."  *Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 518234, at *3 (S.D.N.Y. Feb. 10, 2014); *see also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) ("[I]t is well-established that a party cannot unilaterally refuse to fulfill its discovery obligations as retaliation for another party's discovery violations.").

would effectively moot the present Motions and result in a substantial delay in resolving the case. Presumably the discovery and depositions that have occurred to date would have to be redone. This extension of the proceedings would prejudice the Defendants and constitute a poor use of judicial resources. *See Funches v. Russo*, 2019 WL 5191497, at *2 (N.D.N.Y. Oct. 15, 2019); *CA, Inc. v. AppDynamics, Inc.*, 2014 WL 2805115, at *4 (E.D.N.Y. June 20, 2014).

In addition, the Court notes that many of the claims and parties that Plaintiff now seeks to add have already been considered and rejected by the Court. For example, the proposed Third Amended Complaint once again contains claims against Jessica Vinson, the court-appointed attorney for Plaintiff's children, as well as Jeffrey Matte, private legal counsel for Plaintiff's wife in the Warren County Family Court proceedings. As noted extensively in prior decisions, neither individual is a state actor amenable to suit under section 1983. Dkt. No. 7 at pp. 15-16; Dkt. No. 73 at pp. 25-26. Also previously dismissed were Defendants Terry Cahill and Christina Hanchett. Dkt. No. 73 at pp. 22 & 24-25. The District Court has considered and rejected the state law claims noting, *inter alia*, that Plaintiff did not fully satisfy the notice of claim requirements, *id*. at pp. 29-34, but Plaintiff seeks to add those faulty claims once again. Plaintiff's attempt to join these parties must be denied. "Those efforts are barred by the law-of-the-case doctrine, which 'commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and

compelling reasons militate otherwise.'" *Vaughn v. Phoenix House New York Inc.*, 957 F.3d 141, 146-47 (2d Cir. 2020) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). Plaintiff also seeks to add a "Doe" Defendant, even though discovery is now complete and any Doe Defendant has not been identified by Plaintiff.

New proposed Defendants include: three individuals said to be supervisors at the Warren County Social Services Department, Katherin Lambert, Kristina Neel, and Tracy Terry; the Deputy Commissioner of Warren County Social Services, Schrock Seeley; Karren Atkins, a DCYF Permanency Placement Supervisor; and Erik Mastrianni, who may have worked for the Warren County Department of Health or Social Services as an early intervention caseworker. *See* Dkt. No. 98. While Plaintiff already has a claim against the primary caseworker, Ms. Raymond, as well as certain supervisors, Lord and Breen, the addition of new supervisors is problematic and potentially futile in light of the Second Circuit's recent decision which essentially eliminated supervisory liability. *Tangreti v. Bachmann*, 2020 WL 7687688, at *4 (2d Cir. Dec. 28, 2020). Further, the allegations of conspiracy in the proposed Third Amended Complaint against these proposed Defendants are also too vague to support a claim.

Proposed Defendant Karren Atkins is a New Hampshire resident and a DCYF Supervisor and is said to have unlawfully seized Plaintiff's children and placed them in New Hampshire foster care in violation of the Fourteenth Amendment. Dkt. No. 98 at ¶¶ 24 & 99. It is not alleged that Atkins took any acts within the State of New York, and her

addition as a party presents significant jurisdictional and venue issues. *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 387-88 (S.D.N.Y. 2010) (declining to attach pendent venue to a federal malicious arrest and prosecution claims on the basis of the federal parental rights claims arising in New York and holding that "[w]hile the federal parental rights claims may be properly venued in this district, considering 'judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants,' pendent venue on the basis of those claims is inappropriate.").

In addition, Plaintiff's proposed claim in the Third Amended Complaint for a violation of HIPAA is futile. *Meadows v. United Servs., Inc*., 963 F.3d 240, 244 (2d Cir. 2020) ("because HIPAA confers no private cause of action, express or implied, we must dismiss Meadows' claims.").  Without commenting on the merits of the proposed First Amendment retaliation claim, Dkt. No. 98 at ¶ 97, such a claim is separate and distinct from the pending due process claim, and therefore there is no compelling reason to allow that claim to be added at this late date, significantly delaying the resolution of the present dispute.

Considering all the foregoing, the Court exercises its broad discretion and concludes that allowing a further amendment would be unwarranted, prejudicial, and in certain respects futile.  Plaintiff's Motion to file a Third Amended Complaint is therefore denied.

## VI.  MOTION TO SEAL DOCUMENTS

Plaintiff LeClair has made several requests to seal documents that were submitted by him in connection with the presently pending Motions.  Dkt. Nos. 81, 100, 103, & 112. Most of the documents relate to medical records and assessments, and social service records regarding investigations into, or services provided to, Plaintiff and his family. Dkt. Nos. 83, 84, 86, 88, 101, 105, & 112.  The Court has reviewed these documents in connection with the present Motions, either to determine their relevancy, or on more substantive issues.

The Second Circuit has described "[t]he common law right of public access to judicial documents" as "firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).  Under *Lugosch*, when a party moves to seal documents, the Court must undertake a three-step process to determine whether the documents at issue should be sealed.  *Id*. at 119-20.  The Court must first determine whether the documents are "judicial documents" to which the presumption of access attaches.  *See id.* at 119.  A "judicial document" is "relevant to the performance of the judicial function and useful in the judicial process"; merely filing a document with the Court "is insufficient to render that paper a judicial document subject to the right of public access." *Id*. (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")).  Next, if the documents are judicial, the Court must determine the weight of the presumption of access.  *Id*.  The weight is based on the role the documents play in the

Court's "exercise of Article III judicial power." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")).   Generally, the role will fall on a "continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *Amodeo II*, 71 F.3d at 1049).  Finally, the Court must balance the weight of the presumption against "competing considerations." *Id.* at 120 (quoting *Amodeo II*, 71 F.3d at 1050).  Examples of the latter include "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (quoting *Amodeo II*, 71 F.3d at 1050).

In the present case the Court grants Plaintiff's Motion to Seal.  Some of the items or documents that were submitted to the Court were simply not relevant and were not considered, including the DVD supplied by Plaintiff and referred to in Dkt. No. 112, and the Affidavits of Plaintiff's wife found within portions of Dkt. No. 101.   More significantly however, those documents relate to sensitive issues involving children as well as medical and mental health records.  To the extent that the information contained therein is relevant and necessary to this decision, those facts are contained within the decision itself.   There is no further need to disclose to the public this confidential information, and therefore the privacy interests of the individuals outweigh the public's right to view these documents, at least as it relates to this Memorandum-Decision and Order.

## VII.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that Plaintiff's request to serve additional interrogatories (Dkt. No. 66) is hereby DENIED AS MOOT; and it is further

**ORDERED**, that Defendants' Letter-Motion objecting to Plaintiff's December 4, 2020 document demand, and requesting an order directing Plaintiff to respond to their November 30, 2020, document demands (Dkt. No. 117), is hereby GRANTED and Plaintiff shall submit response to the demands within fourteen (14) days of this Order; and it is further

**ORDERED,** that Plaintiff's request for additional discovery and the issuance of discovery subpoenas (Dkt. Nos. 111 & 134), is hereby DENIED; and it is further

**ORDERED**, that Plaintiff's Request for Sanctions due to the alleged spoliation of evidence and, in the alternative, for the appointment of a forensic expert (Dkt. Nos. 102, 107, & 111), is hereby DENIED; and it is further

**ORDERED,** that Plaintiff's Motion to file a Third Amended Complaint, and for the appointment of counsel for his minor children (Dkt. Nos. 97, 98, & 108), is hereby DENIED; and it is further

**ORDERED,** that Plaintiff's Motion to Seal (Dkt. Nos. 81, 100, 103, & 112) the documents contained in Dkt. Nos. 83, 84, 86, 88, 101, & 105 is hereby GRANTED; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

**IT IS SO ORDERED.**

Date: January 12, 2021
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge