**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NICHOLAS J. LECLAIR,

                                        Plaintiff,                          1:19-cv-28 (BKS/DJS)

v.

SARAH RAYMOND, in her individual capacity,

                                        Defendant.

---

**Appearances:**

*For Plaintiff:*
Nicholas J. LeClair, pro se
Oil City, PA 16301

*For Defendant:*
Stephen M. Groudine
Murphy Burns LLP
407 Albany Shaker Road
Loudonville, NY 12211

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

The sole claim remaining in this Section 1983 action is Plaintiff's Fourth Amendment

claim for unlawful entry against Defendant Sarah Raymond. (*See* Dkt. No. 171 (summary

judgment order)). Presently before the Court are: (1) Plaintiff's "request for an answer on the

[Fourth] Amendment *Monell* claim" (Dkt. No. 181); (2) Plaintiff's motions in limine (Dkt. Nos.

186, 190); (3) Plaintiff's requests for subpoenas (*see* Dkt. Nos. 208, 216); and (4) Defendant's

motion in limine (Dkt. No. 203). The Court heard oral argument on the motions at the final

pretrial conference on January 21, 2022.

## II.    FOURTH AMENDMENT *MONELL* CLAIM

On September 17, 2021, Plaintiff filed a letter motion requesting that the Court issue an order on a Fourth Amendment *Monell* claim that was not addressed by the Court's Memorandum-Decision and Order on the parties' motions for summary judgment. (Dkt. No. 181). Plaintiff argues that his Second Amended Complaint states a Fourth Amendment *Monell* claim against Warren County, pointing to three specific allegations that the County:

- acted with "deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed, including those under 14th Amendment, when performing actions related to child abuse reports and dependency proceedings," (Dkt. No. 75, at ¶ 73(e));

- had a "policy and/or practice of accusing parents of child abuse or neglect in order to intimidate parents to providing 'consent' to search homes or unlawfully coerce testimony," (*id.* ¶ 73(f)); and

- had a "policy targeting poor and uneducated families with desirable children to frame them through physical searches, coerced interviews, concealing exculpatory evidence, and falsified local government records and conspire with private attorneys and use them to facilitate unjust custody transfers," (*id.* ¶ 77).

(Dkt. No. 181, at 1–2). Defendant argues that Plaintiff's request is best characterized as a motion to reconsider under Local Rule 60.1, and that such a motion is untimely. (Dkt. No. 211, at 1–2). Defendant further argues that (1) Plaintiff's Second Amended Complaint did not allege a Fourth Amendment *Monell* claim against Warren County and (2) the allegations Plaintiff points to are not implicated by the remaining claim against Defendant Raymond. (*Id.* at 2).

To the extent that Plaintiff's Second Amended Complaint contains a Fourth Amendment *Monell* claim, such claim did not survive the Court's August 25, 2020 Memorandum-Decision and Order granting in part Plaintiff's motion to amend and granting in part the Moving Defendants' motion to dismiss. (*See* Dkt. No. 73). Prior to this decision, Plaintiff had two surviving claims: (1) a substantive due process claim against the Moving Defendants and (2) a

Fourth Amendment claim against Defendant Raymond. (*Id.* at 2). In relevant part, the Court

granted Plaintiff's motion to amend his complaint to add a *Fourteenth* Amendment *Monell* claim

against Warren County. (*Id.* at 27–28 (noting that Plaintiff's proposed Second Amended

Complaint asserts a "Fourteenth Amendment substantive due process claim" against Warren

County and allowing it to proceed where Fourteenth Amendment claim survived against certain

individual defendants); *see also id.* at 43 (granting Plaintiff's motion to amend "as to his

Fourteenth Amendment substantive due process claims against [individual defendants], and the

related *Monell* claim against Warren County, and as to Plaintiff's Fourth Amendment claim

against Raymond")). The Court subsequently granted summary judgment to Defendants on and

dismissed Plaintiff's Fourteenth Amendment claims, including the *Monell* claim against Warren

County. (Dkt. No. 171, at 36–39). To the extent Plaintiff's letter motion could be considered a

motion for reconsideration of either ruling, the fourteen-day period for such a motion has long

passed, and the Court denies it as untimely. N.D.N.Y. L.R. 60.1.

      Moreover, the Court found at the summary judgment stage that:

> Plaintiff has presented no evidence that Warren County (1) has a
> widespread policy or custom of allowing case workers to present
> intentionally misleading information, or ignore exculpatory
> evidence, to substantiate abuse allegations, or (2) systematically
> fails to train case workers on their roles and responsibilities relative
> to investigating abuse allegations.

(Dkt. No. 171, at 37–38). The Court therefore already found no evidence supporting the

allegations Plaintiff now asserts support a Fourth Amendment *Monell* claim. Moreover, the

remaining claim against Defendant Raymond for unlawful entry does not rest on any allegations

of intimidation to obtain consent to enter the home. Finally, there is no evidence that Warren

County had a policy, practice, or custom with respect to entering homes in violation of the

Fourth Amendment.

Accordingly, the Court denies Plaintiff's request for an "answer on the 4th Amendment Monell claim."

## III.   PLAINTIFF'S MOTIONS IN LIMINE

### A.   Defenses

Plaintiff argues that the Court should bar Defendant from offering a "good motives" defense, a *de minimis* defense, or a qualified immunity defense. (Dkt. No. 186, at 10–18). Defendant generally responds that Plaintiff's request is not a proper use of a motion in limine because it seeks substantive, rather than evidentiary, relief. (*See* Dkt. No. 212, at 5–10).

First, Plaintiff argues that the Court should reject "[a]ny attempt to inject a necessity, resident's approval, exigent motive, some new 'hot tip' that was never disclosed in discovery, or similar 'good motive' defense" because Defendant has never alleged consent, exigent circumstances, or other "good motive" defense to enter the home. (Dkt. No. 186, at 10–12). The Court denies this portion of Plaintiff's motion in limine without prejudice to raising objections to specific testimony at trial. Defendant has not asserted any defense based on consent, exigent circumstances, or good motives; rather, she denies entering Plaintiff's home at all. In any event, the Court "is unwilling to speculate, pretrial, as to what statements any witness will or will not make during trial." *Picciano v. McLoughlin*, No. 07-cv-0781, 2010 WL 4366999, at *5, 2010 U.S. Dist. LEXIS 114704, at *15 (N.D.N.Y. Oct. 28, 2010).[1]

The Court also denies Plaintiff's request to bar Defendant from arguing that her entry into Plaintiff's home was "de minimis." The trial will center around Defendant's conduct and whether it was reasonable. Defendant may testify regarding her actions on the day in question,

---

[1] The Court has provided the pro se Plaintiff with a copy of the unpublished decisions cited in this memorandum-decision.

the nature and extent of which are relevant to the reasonableness of her actions as well as to any damages Plaintiff may have suffered as a result of any Fourth Amendment violation.

Finally, the Court denies Plaintiff's request to bar Defendant from asserting a qualified immunity defense. (*See* Dkt. No. 186, at 14–18).[2] While Defendant does not "anticipate" seeking qualified immunity for a Fourth Amendment claim premised on her alleged unlawful entry into the home, Defendant notes that if Plaintiff asserts a Fourth Amendment violation based on a violation of the curtilage of his home, she will request special interrogatories for a qualified immunity defense. (*E.g.*, Dkt. No. 212, at 10).[3] Because Defendant properly raised a qualified immunity defense in her answer to Plaintiff's Second Amended Complaint, the Court denies Plaintiff's request to bar such a defense. To the extent that particular findings of fact are necessary for the Court to determine whether Defendant is entitled to qualified immunity, it is Defendant's responsibility to request specific factual interrogatories for the jury. *See Thomas v. Kelly*, 903 F. Supp. 2d 237, 254 (S.D.N.Y. 2012).

### B.    Exclusions

Plaintiff generally requests that the Court rule as inadmissible "any hearsay statements or scandalous matters" and evidence regarding matters that "pertain to any action or allegation in

---

[2] Plaintiff argues that Defendant "forfeit[ed]" any qualified immunity defense by falsely stating in Defendants' reply in support of their motion for summary judgment that there was an ongoing CPS investigation against Plaintiff at the time of Defendant's alleged unlawful entry. (Dkt. No. 186, at 15–17 (citing Dkt. No. 159, at 7); *see also* Dkt. No. 209, at 16–18). Plaintiff provides no authority that supports his position. Regardless, Defendant's Statement of Material Facts acknowledged: "No pending CPS investigation against the plaintiff was ongoing in August 2018." (Dkt. No. 139-18, at ¶ 97). Furthermore, the Court noted in its summary judgment decision that there was "no evidence in the record that supports [the] amended position" expressed in Defendants' reply. (Dkt. No. 172, at 45 n.16).

[3] Plaintiff's submissions allege that Defendant violated the Fourth Amendment by searching the curtilage of his home, peering through windows, inspecting new curtains, and noting a "black item" in the window. (*See, e.g.*, Dkt. No. 186, at 8, 13). The Court notes that Plaintiff's submissions also reference Defendant's "illegal detainment" of Plaintiff's wife and children. (*See, e.g.*, Dkt. No. 190, at 6, 24; *see also id.* at 6 n.6 (referring to a Fourth Amendment seizure)). To the extent Plaintiff seeks to pursue a Fourth Amendment claim premised on Defendant's alleged "illegal detainment" of his wife and children, he lacks standing to do so. Fourth Amendment rights "are personal" and "may not be vicariously asserted." *United States v. Bohannon*, 824 F.3d 242, 250 (2d Cir. 2016) (quoting *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)) (internal quotation marks omitted).

another state or jurisdiction" which are irrelevant to Plaintiff's Fourth Amendment claim. (*See* Dkt. No. 186, at 18–28). Defendant responds that (1) she "does not anticipate offering into evidence" the documents from New Hampshire authorities Plaintiff references "in her case-in-chief," and (2) Plaintiff's request is essentially one that all admitted evidence "be in compliance with the Federal Rules of Evidence" and not a "legitimate evidentiary issue[] that require[s] an advanced ruling." (Dkt. No. 212, at 10–11).

Plaintiff does identify specific documents he contends are "legally flawed" under the Federal Rules of Evidence: Exhibits E, F, G, and I to Defendants' motion for summary judgment. (*See* Dkt. No. 186, at 22–27 (citing Dkt. Nos. 139-6, 139-7, 139-8, 139-10)). However, none of these documents appears on Defendant's exhibit list. (*See* Dkt. No. 194). In addition, Defendant has represented that she "does not anticipate offering" these documents in her case-in-chief. (Dkt. No. 212, at 11). Accordingly, the Court denies Plaintiff's request to exclude these documents as moot.

The Court also denies Plaintiff's more general request to exclude hearsay statements and scandalous or otherwise irrelevant matters, without prejudice to raising objections at trial. The Court will not issue general admissibility or evidentiary rulings without consideration of specific evidence at issue. *Cf. Garcia v. Law Offices Howard Lee Schiff P.C.*, No. 16-cv-791, 2019 WL 2076736, at *2–3, 2019 U.S. Dist. LEXIS 78980, at *4–6 (D. Conn. May 10, 2019) (noting that evidence should be excluded on a motion in limine only if the evidence is "clearly inadmissible on all potential grounds" and denying motion in limine where the movant provided "little insight into forthcoming undisclosed evidence"). The Court will rule on objections properly made at trial in accordance with the Federal Rules of Evidence.

### C.    Production of DSS Records and Reports

Plaintiff moves for an order compelling Defendant to produce official "Warren County DSS records between 2/16/18-10/9/18." (Dkt. No. 186, at 29). It appears that the records at issue were previously produced to Plaintiff by former Defendant Warren County, and that Plaintiff is seeking certified copies of the records that would be self-authenticating under Federal Rule of Evidence 902(11). However, Defendant has stipulated to "the foundation of all DSS records previously disclosed" by Warren County. (Dkt. No. 212, at 11–12).

Although Defendant may object to admissibility on other grounds, in light of the parties' stipulation, the fact that the DSS records Plaintiff has are not certified originals will not bar their admissibility at trial. The Court therefore denies Plaintiff's motion for an order compelling the production of original, certified records as unnecessary.[4]

In his January 5, 2022 "reply in limine," Plaintiff expresses concern that Defendant will object to these documents under the "best evidence rule" and requests that the Court issue a subpoena to the Office of Children and Family Services ("OCFS") to produce original, certified records or a record custodian. (Dkt. No. 214, at 3–4, 8–9). Even if the best evidence rule applied to these documents, which is unlikely, a "duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Again, Defendant has stipulated to the foundation of the documents and therefore will not raise a question as to their authenticity. No order to compel production or other subpoena is necessary, and the Court denies Plaintiff's request.

---

[4] The Court notes that the parties have stipulated to the admission of certain of these DSS records into evidence. (*See* Dkt. No. 200, at 3 (stipulating into evidence exhibits D-1 through D-4)).

7

### D.    Inclusions

Plaintiff filed a separate motion in limine "to include" certain evidence. (*See generally* Dkt. No. 190; *see also* Dkt. No. 209 (Plaintiff's "reply in limine")). Plaintiff generally argues that numerous types of evidence are relevant and admissible, including mens rea and intent, character for untruthfulness, bias, and character and habit evidence. (*See* Dkt. No. 190). Plaintiff also identifies 32 documents, which appear to correspond to the first 32 exhibits on his exhibit list and which he seeks to have the Court rule as admissible. (*Id.* at 27–32; *see also* Dkt. No. 205).

### 1.    Generally

At the outset, the Court notes that most of the evidence Plaintiff seeks to introduce in this case concerns the Child Protective Services investigation to which he and his wife were subject, and his objections to the handling of that investigation by the Defendant caseworker and others. Plaintiff asserts that Defendant was biased against him, and in favor of his mother-in-law and brother-in-law, with whom his children lived during part of the investigation. The only claim remaining for trial, however, is whether Defendant violated Plaintiff's Fourth Amendment rights during a home visit on August 14, 2018. Plaintiff's other claims against the Defendant and other Warren County Department of Social Services ("DSS") employees were dismissed on summary judgment, and this is not a forum for his complaints regarding their investigation. As described below, most of the DSS records that the Plaintiff seeks to introduce are not relevant here, or have such minimal relevance that any probative value is substantially outweighed by the dangers of confusing the issues and wasting time. Fed. R. Evid. 403.

In his submissions, Plaintiff also discusses the Federal Rules of Evidence and how they might apply to the present case at a general level. (*See* Dkt. No. 190, at 11–25). The Court makes

the following observations in an effort to assist the parties in preparing for trial and to avoid unnecessary interruptions related to evidentiary issues at trial.

First, Defendant's subjective motivation or intent is irrelevant in determining whether her conduct violated the Fourth Amendment. *See Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action." (internal quotation marks and citation omitted)); *see id.* ("The officer's subjective motivation is irrelevant."). The issue is simply whether the defendant's conduct was reasonable, i.e., whether the circumstances, viewed objectively, justified the action at issue. *Id.* Plaintiff's many assertions to the contrary are incorrect. However, motivation is relevant to the question of punitive damages: "Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Cotto v. City of Middletown*, 158 F. Supp. 3d 67, 83–84 (D. Conn. 2016) (quoting *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996)).

Second, Defendant's intent, motive, bias, and character for truthfulness are not "essential element[s] of a charge, claim, or defense" under Federal Rule of Evidence 405(b). For Rule 405(b) to apply, a character trait must be an essential element of a claim as defined by the governing substantive law. *See United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997). Here, Defendant's motives are not an essential element of a claim; they are relevant only on the issue of punitive damages. While Defendant's character for truthfulness is relevant to her credibility as a testifying witness, she may be impeached on that basis only by the use of reputation or opinion testimony or by inquiry into specific instances of conduct under Rule 608. *See* Fed. R. Evid.

608(a) ("A witness's credibility may be attacked or supported by testimony about the witness's

reputation for having a character for truthfulness or untruthfulness, or by testimony in the form

of an opinion about that character.").[5] Furthermore, while the Court may allow inquiry into

"specific instances of a witness's conduct" which are probative of the witness's character for

truthfulness on cross-examination, "extrinsic evidence is not admissible" to prove those

instances. Fed. R. Evid. 608(b).

Third, and relatedly, Defendant's alleged lies and fabrications in the records she prepared

related to Plaintiff and his family are not other crimes, wrongs, or acts, evidence of which may

be admissible for purposes other than proving propensity under Federal Rule of Evidence 404(b).

(*See, e.g.*, Dkt. No. 190, at 20–21). Evidence relevant to a witness's character for truthfulness is

governed by Rule 608(b) and not Rule 404(b). *See United States v. Cushing*, No. 00-cr-1098,

2002 WL 1339101, at *3, 2002 U.S. Dist. LEXIS 10926, at *8–9 (S.D.N.Y. June 18, 2002)

(holding that the admission of evidence that "would only tend to demonstrate [the defendant's]

willingness to lie" is "exactly the type of consequence that Rule 404(b) seeks to preclude");

*Cordova v. Hoisington*, No. 11-cv-806, 2014 WL 11842837, at *1, 2014 U.S. Dist. LEXIS

188557, at *3–4 (D.N.M. Jan. 17, 2014) (noting that the approach holding that "challenging the

truthfulness of a witness is a permissible 'other purpose' under Rule 404(b)" has been "criticized

because Rule 608 is the specific rule applicable to attacks on the truthfulness of a witness" and

collecting cases); *Pace v. Bunch*, No. 10-cv-460, 2012 WL 32980, at *2, 2012 U.S. Dist. LEXIS

2276, at *5–6 (S.D. Miss. Jan. 6, 2012) (noting that Rule 608(b) expressly allows cross-

examination regarding specific acts that speak to a witness's character for truthfulness and

---

[5] Plaintiff seems to suggest that Defendant has put her character at issue and has a character for untruthfulness because her account of the events underlying Plaintiff's claim differs from Plaintiff's and Ms. Whipple's accounts. The fact that a witness has a different version of events does not make her character an essential element of a claim. Rather, as always, the jury will decide which version of events to credit.

therefore that Rule 404(b) does not apply or "trump[]" Rule 608); *Robinson v. Banning*, No. 20-cv-5442, 2021 WL 5631755, at *2, 2021 U.S. Dist. LEXIS 228509, at *5 (E.D. Pa. Nov. 30, 2021) (holding that Rule 404(b) "forbids" the reasoning that because a witness lied on a previous occasion, he lied on a subsequent occasion). Moreover, it is unclear to the Court how Defendant's alleged fabrications and omissions in her investigation summary are probative of other permissible purposes under Rule 404(b), such as intent, motive, opportunity, planning, or absence of mistake in the alleged Fourth Amendment violation at issue here. The Court finds that any such probative value is minimal and substantially outweighed by the dangers of confusing the issues and wasting time. Fed. R. Evid. 403.

Fourth, Defendant's alleged tendency to be untruthful does not rise to the level of habit under Federal Rule of Evidence 406. Rule 406 provides: "Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. For evidence to be admissible to demonstrate habit, the proponent "must establish 'the degree of specificity and frequency of uniform response that ensures more than a mere tendency to act in a given manner, but rather, conduct that is semiautomatic in nature.'" *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 309 (D. Conn. 2016) (quoting *Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536, 542 (S.D.N.Y. 2005)). The behavior Plaintiff cites as habit is not reflexive or "semiautomatic" in nature.

### 2.     Summaries

Plaintiff seeks to introduce two summaries or charts of "voluminous writings to prove content" under Federal Rule of Evidence 1006. (*See* Dkt. No. 190, at 27 (Plaintiff's Exhibits 1–2)). First, as his Exhibit 1, Plaintiff seeks to admit a summary of phone calls between Defendant and his mother-in-law to prove bias. Although the Court has not seen this summary, Defendant

states that Plaintiff provided the summary to her prior to his motion. (Dkt. No. 212, at 12).

Defendant argues that (1) the summary contains prejudicial language and descriptions, (2) the

underlying DSS records referenced are not overly voluminous such that a summary is necessary,

(3) Plaintiff does not seek to admit the underlying records, as required, and (4) the summary is

irrelevant to the remaining issue. (*Id.* at 12–13). Second, Plaintiff seeks to admit a summary of

unannounced home visits as Plaintiff's Exhibit 2 to prove bias. Defendant objects to the

admissibility of this summary for the same reasons she objected to the first summary. (*Id.* at 13).

The Court will evaluate at trial whether the patterns of phone calls and unannounced

home visits are, as Plaintiff argues, probative of Defendant's bias and motivation, so that the

Court has an opportunity to consider this evidence in context. The Court thus reserves ruling on

the admissibility of this evidence until trial. *See, e.g.*, *Walker v. Schult*, 365 F. Supp. 3d 266, 275

(N.D.N.Y. 2019) ("The trial judge may reserve judgment on a motion *in limine* until trial to

ensure the motion is considered in the proper factual context." (citation omitted)). In any event,

summary charts must be "based upon and fairly represent competent evidence already before the

jury." *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (quoting *United States

v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977)). Summaries with extraneous prejudicial language

and descriptions inserted by Plaintiff will not be admissible.

To the extent that the patterns of phone calls and unannounced home visits are relevant

and admissible, the parties may agree on a list documenting the phone calls or unannounced

visits. Alternatively, Plaintiff may seek to admit the records from which he draws this data with

the inadmissible information redacted.

### 3.      Case Reports and File History

Plaintiff seeks to admit a number of DSS records prepared by Defendant or other third-

party caseworkers. (*See* Dkt. No. 190, at 27–28 (Plaintiff's Exhibits 3–12)). Defendant generally

responds that these records are irrelevant to Plaintiff's Fourth Amendment claim and states that, if Plaintiff is permitted to introduce certain DSS records or portions thereof, she will request inclusion of "all records" in Defendant's DSS file for completeness under Federal Rule of Evidence 106. (Dkt. No. 212, at 13–16).[6] The Court notes that the parties have stipulated to the admission of the progress notes Defendant prepared regarding the August 2018 home visit at issue here. The Court reserves ruling on the admissibility of certain records and finds that the remaining DSS records that Plaintiff seeks to admit are either not at all relevant to his Fourth Amendment claim, or that any minimal relevance is substantially outweighed by the dangers of confusing the issues and misleading the jury about the specific conduct at issue in this case.

Specifically, the Court finds that the following exhibits are not admissible because they are irrelevant: Plaintiff's Exhibit 3,[7] 4, 5, 6, 8, and 10. To the extent Plaintiff suggests that something in the reports prepared by Defendant was untruthful, extrinsic evidence is not admissible to prove specific instances of Defendant's conduct to attack her character for untruthfulness.[8] Plaintiff may, on cross-examination, inquire into specific instances of Defendant's conduct in order to attack her character for truthfulness. Fed. R. Evid. 608(b). The Court further finds that, to the extent there is any minimal probative value in any of these exhibits, it is substantially outweighed by the dangers of confusing the issues and wasting time. Fed. R. Evid. 403.

---

[6] The parties have already stipulated to the records Plaintiff seeks to admit as Plaintiff's Exhibit 11 as Exhibit D-1. (*See* Dkt. No. 200, at 3). Furthermore, Defendant has stipulated to the foundation of all DSS records disclosed in discovery.

[7] At the final pretrial conference, the parties agreed to stipulate that Plaintiff's mother-in-law and his brother-in-law were known to the Defendant.

[8] Further, Plaintiff's Exhibit 8 is not relevant because it is a report prepared by a third-party caseworker in September 2018, more than one month after the alleged unlawful entry at issue in this case. Plaintiff's Exhibit 10 likewise is irrelevant, as it is prepared by a third-party caseworker and makes no mention of Defendant.

The Court reserves ruling on the relevance and admissibility of the following exhibits: Plaintiff's Exhibit 7, 9, and 12.

### 4.    Medical Records

Plaintiff's Exhibits 13 through 17 consist of records from his son's medical appointments occurring between October 2015 and February 2019. (*See* Dkt. No. 190, at 29). Plaintiff asserts these records are relevant "on grounds of bias, motive, character trait for untruthfulness, pattern of untruthful records, pattern to omit, planning, preparation, [and] intent." (*Id.*). Defendant objects that Plaintiff's children's medical records are not relevant to the Fourth Amendment claim. (Dkt. No. 212, at 16–18). The Court agrees with Defendant. It appears that Plaintiff wants to introduce his children's medical records to prove that one or more statements in Defendant's reports regarding medical care of his children are untrue. However, extrinsic evidence is not admissible to prove specific instances of Defendant's conduct to attack her character for untruthfulness. Fed. R. Evid. 608(b).

### 5.    Custody Order

Plaintiff's Exhibit 18 is the Final Order of Custody and Visitation entered by the Warren County Family Court on October 10, 2018. Defendant objects that the order is not self-authenticating and asserts that its relevance is "questionable and is best left for a determination at trial." (Dkt. No. 212, at 18). It is unclear how a custody order entered after the events at issue is relevant to Plaintiff's Fourth Amendment claim, and the Court notes that the parties have stipulated to the fact that Plaintiff and Ms. Whipple were awarded full custody of their two children on August 22, 2018 and have retained full custody since that date. (Dkt. No. 200, at 3). The Court therefore finds that any minimal probative value of this record is substantially outweighed by the dangers of confusing the issues and wasting time, Fed. R. Evid. 403, and Plaintiff's Exhibit 18 is inadmissible.

### 6.      Photographs and Diagram

Plaintiff's Exhibit 19 consists of three photographs purporting to show child abuse injuries to Plaintiff's children by third parties. Defendant argues that Plaintiff must lay a proper foundation for the photographs at trial, and that the photos are irrelevant to the Fourth Amendment claim. (Dkt. No. 212, at 18). The parties have stipulated that "[m]ultiple new allegations of child abuse/neglect were made by the plaintiff and/or his wife against [plaintiff's mother-in-law and brother-in-law] while the Family Court action was still pending." (Dkt. No. 200, at 3). It appears that Defendant's visit to Plaintiff's residence on August 14, 2018 was in response to these allegations. While Plaintiff expressed concern, at the final pretrial conference, that Defendant would argue that the allegations were manufactured, Defense counsel states that he does not intend to introduce any such evidence. It does not appear that the photographs will be relevant at trial, but the Court reserves ruling on admissibility until trial.

Second, Plaintiff seeks to admit as his Exhibit 20 "Original Photograph / Duplicate Photograph; Pltfs. 6368 Chestertown NY 12817 Residence Photos." (Dkt. No. 190, at 30). At the final pretrial conference Plaintiff asserted that the photographs would enable the jury to see how far Defendant walked into his small residence. Defendant responds that Plaintiff never produced these photographs during discovery, and that Plaintiff would have to establish their foundation and relevance at trial. (Dkt. No. 212, at 19). The Court reserves ruling until trial.

Third, Plaintiff seeks to admit as his Exhibit 21 "Pltfs. 'Ex. DVD' – 6/27/18 Video of parts of [S]ervice Interview with Defendant." (Dkt. No. 190, at 30). Defendant objects that she was not provided a playable copy of the video during discovery, that a video from June 27, 2018 is not relevant to the events of August 14, 2018, and that Plaintiff would have to establish foundation at trial. (Dkt. No. 212, at 19). The Court reserves ruling until trial.

Finally, Plaintiff seeks to admit "Demonstrative Evidence in the Form of a fair and accurate depiction / Diagram"; at the final pretrial conference Plaintiff described this exhibit as a diagram of his home and its curtilage. (Dkt. No. 190, at 30 (Plaintiff's Exhibit 22)). As Defendant notes, Plaintiff must establish its foundation and relevance at trial. (Dkt. No. 212, at 19). The Court reserves ruling until trial.

### 7.   Depositions and Affidavits

Plaintiff seeks to admit his and Ms. Whipple's depositions as well as Defendant's and Ms. Whipple's affidavits. (Dkt. No. 190, at 30–31 (Plaintiff's Exhibits 23–26)). Plaintiff contends these documents are relevant to "refresh Witnesses['] memory, prior inconsistent statement[,] or prior consistent statement," and that Defendant's affidavit is further relevant to "bias, motive, character trait for untruthfulness, pattern of untruthful records, pattern to omit, planning, preparation, [and] intent." (*Id.*). Defendant objects to the admission of her affidavit, where she will be testifying at trial, for any purpose other than impeachment or refreshing her recollection. (Dkt. No. 212, at 20). Defendant also responds that she may use Plaintiff's deposition transcript for "any number of allowed purposes" but argues that Plaintiff may not read from his deposition transcript rather than testify at trial. (*Id.* at 19–20).

An opposing party's statement, offered as evidence against that party, is not hearsay and is admissible if it is relevant. Fed. R. Evid. 801(c)(2); *see Brown v. Pagan*, No. 08-cv-8372, 2010 WL 1430702, at *2, 2010 U.S. Dist. LEXIS 34800, at *4 (S.D.N.Y. Apr. 8, 2010) (holding the plaintiff's deposition transcript offered by the defendants "admissible as the admission of a party opponent"). Defendant may thus introduce relevant portions of Plaintiff's deposition transcript at trial but, absent a hearsay exception, Plaintiff cannot admit his own deposition transcript. His deposition transcript may be used, as appropriate, for other purposes, such as refreshing his

recollection. Similarly, Plaintiff may introduce, as evidence against Defendant, her relevant statements and affidavit.

Ms. Whipple's deposition may be admissible for impeachment, *see*, *e.g.*, Fed. R. Evid. 801(d)(1)(A) or it may be used, as appropriate, to refresh her recollection. (Dkt. No. 212, at 20). Her deposition and affidavit are, however, not admissible as evidence absent a hearsay exception.

### 8. Legal Memoranda and Filings

Plaintiff seeks to admit three exhibits consisting of legal memoranda or other documents from this case, which he contends are relevant to "refresh Witnesses['] memory, prior inconsistent statement or prior consistent statement[,] bias, motive, character trait for untruthfulness, pattern of untruthful records, pattern to omit, planning, preparation, intent." (Dkt. No. 190, at 31 (Plaintiff's Exhibits 27–29)).

First, Plaintiff's Exhibit 27 consists of two pages from Defendants' Reply Memorandum of Law in support of their motion for summary judgment. (*See* Dkt. No. 159, at 7–8). Defendant objects that there is "no foundation, relevance, or any other plausible basis for the admissibility of this document." (Dkt. No. 212, at 21). The Court agrees. "An attorney's unsworn statements in a brief are not evidence." *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) (citation omitted). The Court therefore denies Plaintiff's request that this exhibit be deemed admissible.

Second, Plaintiff's Exhibit 28 is a letter brief submitted by Defendants opposing certain of Plaintiff's discovery motions. (*See* Dkt. No. 110, at 1–3). The fourth page consists of an excerpt of the New York State "Connections" Handbook which details how workers may print progress notes saved in the Connections system and indicates that draft progress notes are "automatically" converted to "Final" status after 20 days. (*See id.* at 4). Defendant objects that there is "no foundation, relevance, or any other plausible basis for the admissibility of this

document." (Dkt. No. 212, at 21). The Court agrees. As noted, an attorney's unsworn statements and arguments in papers filed with the Court are not evidence. *Kulhawik*, 571 F.3d at 298. The handbook excerpt also does not appear to be relevant: Magistrate Judge Stewart previously determined, in declining Plaintiff's requests for spoliation sanctions, that the varying printout dates on the home visit records were insufficient to establish destruction or alteration of the records. (Dkt. No. 148, at 10). Magistrate Judge Stewart also found that Defendants properly complied with their discovery obligations. (*See id.*). Accordingly, this exhibit does not appear relevant to Plaintiff's Fourth Amendment claim and is inadmissible.

Third, Plaintiff's Exhibit 29 consists of two pages from Defendants' response to Plaintiff's second Rule 34 request for documents. (*See* Dkt. No. 186, at 34–35). In this response, Defendants assert that they have "already provided all responsive documents which are not prohibited from disclosure by any Social Services Law" and state that "[i]t is unlawful for defendants to provide plaintiff with unfounded CPS case notes pertinent to investigations into third-parties, even if said investigation involved the plaintiff's children." (*Id.*). Defendant objects that there is "no foundation, relevance, or any other plausible basis for the admissibility of this document" at trial. (Dkt. No. 212, at 21).

It is unclear to the Court how this discovery response is relevant to the claim remaining for trial. It appears that Plaintiff's theory is that this response shows that Defendants were untruthful or not forthcoming during discovery. However, Defendants were correct that records relating to an unfounded investigation into third parties are sealed under New York law. (*See* Dkt. No. 148, at 9 (citing 18 N.Y.C.R.R. § 432.9)). Nevertheless, Defendants provided the records Plaintiff sought to Magistrate Judge Stewart for an *in camera* review, after which the

records were produced to Plaintiff. Accordingly, the discovery response is not relevant to Plaintiff's claim and is not admissible.

### 9.   Emails

Plaintiff seeks to admit three email chains, dated July 6, 2018, July 2, 2018, and July 5, 2018, which he contends are relevant to "refresh Witnesses['] memory, prior inconsistent statement or prior consistent statement[,] bias, motive, character trait for untruthfulness, pattern of untruthful records, pattern to omit, planning, preparation, [and] intent." (Dkt. No. 190, at 31–32 (Plaintiff's Exhibits 30–32)). Plaintiff states that these emails are attached as Exhibit C to Docket Number 186.

Exhibit C to Docket Number 186 is an email chain consisting of one email sent from Defendant to Plaintiff on July 6, 2018, and one from Plaintiff to Defendant on July 8, 2018. (*See* Dkt. No. 186, at 36–37). Defendant writes in the July 6 email: "I went to your home today to meet with you guys, but [Ms. Whipple] refused access to the home, as you were not there." (*Id.* at 36). In his July 8 response, Plaintiff provides information about his work schedule and when he might be at home. (*Id.*). Defendant objects that the emails are irrelevant to Plaintiff's Fourth Amendment claim. (Dkt. No. 212, at 22). The Court finds that these emails are relevant to the claim remaining for trial, because they are probative of lack of consent to enter the home. Because Defendant has stipulated to the foundation of these emails, they are admissible at trial.

It became clear at the final pretrial conference, however, that the Court does not have before it the other two email chains Plaintiff seeks to admit. The Court therefore reserves ruling on their admissibility.

### E.   Redaction Requests

Throughout his submissions, Plaintiff asserts that records must be redacted to remove "prejudicial double or triple hearsay," prior bad acts, and irrelevant matters. (*E.g.*, Dkt. No. 186,

at 18–19, 21; *see also* Dkt. No. 186-1, at 3–4 (requesting that the Court "compel the Defense to cooperate" with regards to the "redaction of documents")). In his January 5, 2022 "reply in limine," Plaintiff also makes arguments regarding redactions and identifies 14 of his exhibits that require redactions. (*See* Dkt. No. 214).

As an initial matter, the parties agreed at the final pretrial conference that all exhibits will be redacted of personal identifying information including birthdates and the names of Plaintiff's children. Throughout the trial, Plaintiff's children may be referred to only by their initials. The parties will refer to the individuals whom Plaintiff and/or his wife accused of child abuse/neglect as Plaintiff's mother-in-law and Plaintiff's brother-in-law.

The Court anticipates, in light of its rulings in this decision, that few of Plaintiff's documentary exhibits will be admitted at trial. To the extent Plaintiff believes redactions of exhibits that may be admitted at trial are necessary, Plaintiff is directed to discuss this with defense counsel and to bring redacted versions of the exhibits for trial. The parties may make specific evidentiary objections to exhibits proffered at trial.

## IV.   PLAINTIFF'S SUBPOENA REQUESTS

On December 31, 2021, Plaintiff filed a "Subpoena Request," attaching proposed subpoenas for (1) James P. Merrigan and (2) Maribeth A. Hunt. (Dkt. No. 208). In response, Defendant argues that Plaintiff has not indicated how the testimony of these witnesses is relevant or necessary and that he never disclosed these witnesses in his Rule 26 disclosure. (Dkt. No. 210). In reply, Plaintiff (1) argues that Mr. Merrigan's testimony will be necessary to overcome a best evidence objection to his Psychological Evaluation Report and that Mr. Merrigan may serve as a character witness; (2) withdraws his subpoena request as to Ms. Hunt, who is no longer employed with OCFS; (3) requests a subpoena directed at a "Records Access Officer" employed with OCFS; (4) reiterates his request, as stated in Docket Number 214, for a subpoena directed at

OCFS to overcome a best evidence objection; and (5) requests a new subpoena "for the production of a certified copy of the Warren County Budget DSS Budget for the years 2018 & 2021." (Dkt. No. 216). Plaintiff does not address his failure to disclose Mr. Merrigan or Ms. Hunt as witnesses in his Rule 26 disclosure. (*See id.*).

Mr. Merrigan prepared an April 15, 2018 Psychological Evaluation Report regarding Plaintiff and Ms. Whipple. (Dkt. No. 210).[9] Plaintiff argues that, if Defendant attacks Plaintiff's character, he intends to have Mr. Merrigan testify as a lay witness as to "character opinion, impeachment, and rebuttal testimony." (*See* Dkt. No. 216, at 1–2). Because Plaintiff never disclosed Mr. Merrigan as a possible witness, Plaintiff's character is not directly at issue in this trial, and defense counsel informed the Court at the final pretrial conference that he does not intend to attack the character of either Plaintiff or his wife, the Court finds that Mr. Merrigan's testimony is not relevant and denies Plaintiff's request for a subpoena.

The Court also denies Plaintiff's request for a subpoena directed at a Records Access Officer employed with OCFS who can authenticate OCFS records or provide certified copies of the records. Defendant has stipulated to the foundation of true and accurate copies of the OCFS records that have been disclosed to Plaintiff in this case, and certified copies or authentication testimony is unnecessary. For the same reasons, the Court denies Plaintiff's subpoena request for a certified copy of the "Warren County Budget DSS Budget" documents which were previously disclosed to him.

---

[9] Defendant has stipulated to the foundation of this report. Mr. Merrigan would therefore not be needed to testify as a record witness or to overcome a best evidence objection if the report were admissible.

As discussed above, the Court denies Plaintiff's request for a subpoena directed at a records access officer from OCFS for the purpose of overcoming a best evidence objection. *Supra* Section III.C.

## V.   DEFENDANT'S MOTION IN LIMINE

Defendant requests spoliation sanctions for Plaintiff's failure to preserve a video he purportedly had at one time capturing her entry into his home on the day in question. (Dkt. No. 203). Defendant requests that Plaintiff and Ms. Whipple be precluded "from testifying about the existence or contents of a video" or, in the alternative, an adverse jury instruction. (*Id.* at 2). Defendant argues that Plaintiff's failure to preserve the video amounts to, at a minimum, negligence and that the video is clearly relevant to the Fourth Amendment claim going to trial. (*Id.*). Plaintiff generally responds that there is no indication that he acted in bad faith in failing to preserve the video, arguing that by the time he decided to file suit in December 2018 he "had no idea where the video camera was, could not find the camera or video card with said video, and thus did not include it within the Complaints." (Dkt. No. 206, at 11–12).

In his response to Defendants' interrogatories, Plaintiff stated: "there was no recording of the illegal entry." (Dkt. No. 139-3, at ¶ 9(i)). However, at deposition, Plaintiff testified to a "security camera" which captured Defendant's alleged unlawful entry and which Plaintiff had viewed. (Dkt. No. 139-4, at 183–85). He stated that he had footage from the camera at some point and had been "searching" for it. (*Id.* at 185–86 ("I might have it. I might not. It might have been deleted. We might have lost the SD card.")). Plaintiff has not produced any video from this camera. (*See* Dkt. No. 203, at 1).

A party seeking sanctions for spoliation must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was

'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002 (citation omitted)). The "culpable state of mind" element can be satisfied by a showing that the evidence was destroyed in bad faith or with gross or simple negligence. *Wilson v. Hauck*, 141 F. Supp. 3d 226, 230 (W.D.N.Y. 2015) (citing *Residential Funding Corp.*, 306 F.3d at 108). Where the spoliating party acts only negligently, the party seeking spoliation sanctions "must make a showing that the lost materials were relevant." *McGrew v. Holt*, No. 13-cv-792, 2015 WL 235876, at *3, 2014 U.S. Dist. LEXIS 180481, at *8 (N.D.N.Y. Dec. 9, 2014), *report-recommendation adopted by* 2015 WL 235876, 2015 U.S. Dist. LEXIS 5247 (N.D.N.Y. Jan. 16, 2015). Relevance in this context means more than the standard under Federal Rule of Evidence 401 and requires a "likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction." *Id.*, 2015 WL 235876, at *4, 2014 U.S. Dist. LEXIS 180481, at *8–9.

Here, it is not clear that litigation was reasonably foreseeable at the time the video was lost such that Plaintiff had an obligation to preserve it. Plaintiff testified that it was "half a year before we ever even thought or dreamed of filing a federal suit." (Dkt. No. 139-4, at 186; *see also* Dkt. No. 206, at 11 (arguing lack of bad faith and noting that at the time he decided to file suit in "late December 2018" he "had no idea where the video camera was")). The Court therefore denies Defendant's request for a spoliation sanction. *Cf. Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 708 (S.D.N.Y. 2017) (finding the defendants did not have an obligation to preserve evidence where, inter alia, no suit had been filed at the time the evidence was lost and there was no evidence that they had "any reason to believe" suit would be filed against them).

Defendant also argues that "[t]estimony about what was seen on a videotaped surveillance recording is hearsay," but does not explain why that is the case. (Dkt. No. 203, at 2). At his deposition, Plaintiff testified about what he observed on the videorecording; he did not testify that there was audio to the recording or as to any statements or assertions he heard on the recording. (*See* Dkt. No. 139-4, at 187–91). Thus, the video itself is not hearsay, and it would not be hearsay for Plaintiff to testify as to his observations of the videotape. *Cf. Madden v. Town of Hempstead*, No. 16-cv-6835, 2019 WL 1439935, at *3 n.6, 2019 U.S. Dist. LEXIS 56581, at *8 n.6 (E.D.N.Y. Mar. 29, 2010) (holding that a security video recording "which [did] not contain audio" was not inadmissible hearsay).

Defendant also argues that testimony about what was seen on a videorecording "would be highly prejudicial to Defendant because the defense has never seen any such video and would be unable to challenge Plaintiff's recitation of the events which the video supposedly depicts." (Dkt. No. 203, at 2). However, the Second Circuit has allowed testimony about recordings that are lost by someone who has personally observed them. *See, e.g.*, *Cameron v. City of New York*, 598 F.3d 50, 67 (2d Cir. 2010) (allowing witness to testify as to the "*content* of the 911 calls and the booking photo—[the plaintiff's] demeanor and statements in the former, and her appearance in the latter—as the photo and the tapes of the calls are no longer in existence and [the witness] personally observed them").[10] While Plaintiff stated there was no recording of the incident in his response to interrogatories, the subject of the videotape came up at his deposition, and defense counsel was able to question both Plaintiff and Ms. Whipple about any recordings. The fact that

---

[10] In *Cameron*, the Second Circuit observed that testimony about the content of the 911 calls and booking photo could be excluded on "best evidence" grounds if the appellees "lost or destroyed the originals in bad faith." 598 F.3d at 67 n.10 (citing Fed. R. Evid. 1004(1)). Here, as in *Cameron*, there is no evidence that the video was lost or destroyed in bad faith.

the video was never produced or disclosed, as well as other matters, go to the weight of any testimony about the video and may be inquired into by defense counsel.[11]

Accordingly, the Court denies Defendant's motion in limine.

## VI.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's letter motion for an answer granting or denying a Fourth Amendment *Monell* claim (Dkt. No. 181), is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion in limine (Dkt. No. 186) is **GRANTED in part and DENIED in part** as set forth in this opinion; and it is further

**ORDERED** that Plaintiff's motion in limine (Dkt. No. 190) is **GRANTED in part and DENIED in part** as set forth in this opinion; and it is further

**ORDERED** that Defendant's motion in limine (Dkt. No. 203) is **DENIED**; and it is further

**ORDERED** that Plaintiff's subpoena requests (Dkt. No. 208) are **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>January 25, 2022</u>
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[11] The Court notes that Ms. Whipple's deposition testimony on this point is more limited than Plaintiff's. Ms. Whipple testified to the existence of a recording from August 14, 2018, but stated: "I haven't been able to find it yet." (Dkt. No. 139-5, at 72). She did not explain how she came to know of the existence of a recording. (*See id.*). Ms. Whipple further testified that she did not ever review the footage after the alleged unlawful entry; nor did Plaintiff ever show it to her. (*Id.* at 72–73 ("I experienced it in real life; I did not need to see it on video.")). Accordingly, it appears that Ms. Whipple does not have the requisite personal knowledge to testify about the contents of the video, and Defendant is free to object to testimony to that effect. Plaintiff, in turn, is limited to making arguments to the jury based solely on the admissible evidence entered at trial.