UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS J. LECLAIR,

                                   Plaintiff,                1:19-cv-28 (BKS/DJS)

v.

SARAH RAYMOND, in her individual capacity,

                                   Defendant.
_____

**Appearances:**

*Plaintiff pro se:*
Nicholas J. LeClair
Oil City, PA 16301

*For Defendant:*
Stephen M. Groudine
Murphy Burns LLP
407 Albany Shaker Road
Loudonville, NY 12211

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiff Nicholas LeClair commenced this action under 42 U.S.C. § 1983 asserting, among others, a claim that Defendant Sarah Raymond violated his Fourth Amendment rights by entering his residence and searching the curtilage of his residence without permission on August 14, 2018. The Fourth Amendment claim against Defendant proceeded to a jury trial which was held from January 31, 2022 to February 1, 2022. The jury returned a verdict finding that Plaintiff failed to prove his Fourth Amendment claim by a preponderance of the evidence. (Dkt. No. 229). Presently before the Court is Plaintiff's motion for a new trial pursuant to Federal Rule of Civil

Procedure 59(a), (Dkt. Nos. 231, 240), and Plaintiff's request for leave to file an amended complaint, (Dkt. Nos. 240, 242, 247). Defendant opposes the motions. (Dkt. No. 246). In this decision the Court also considers Defendant's motion for costs, (Dkt. No. 232), Plaintiff's objection to the bill of costs and cross-motion for a stay pending appeal, (Dkt. No. 236), and Defendant's reply, (Dkt. No. 243). For the following reasons, Plaintiff's motion for a new trial is denied, Plaintiff's request for leave to file an amended complaint is denied, Defendant's motion for costs is granted in part, and Plaintiff's motion for a stay pending appeal is denied.

**II.     RULE 59 MOTION**

    **A.     Standard of Review**

Under Rule 59(a), a court may "grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), "including if the verdict is against the weight of the evidence." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012). The Second Circuit has explained that "a decision is against the weight of the evidence . . . if and only if the verdict is [1] seriously erroneous or [2] a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002). On a Rule 59 motion for a new trial, the court "is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id*. (quoting *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992)). Although a court "may weigh the evidence and the credibility of witnesses" when considering a Rule 59 motion, "a judge should rarely disturb a jury's evaluation of a witness's credibility and may not freely substitute his or her assessment of the credibility of witnesses for that of the jury

simply because the judge disagrees with the jury." *Raedle*, 670 F.3d at 418 (citation and internal quotation marks omitted).

### B. Discussion

Plaintiff alleged that Defendant, a former Warren County Child Protective Services ("CPS") caseworker, violated his Fourth Amendment rights by entering his residence without permission on August 14, 2018, when Plaintiff's wife was home with their children. Plaintiff also alleged that Defendant impermissibly searched the curtilage of his home by peering into the back window of his residence. At trial, Plaintiff's wife, Plaintiff, and Defendant testified. (*See* Text Minute Entries for Jan. 31, 2022 and Feb. 1, 2022). Defendant denied entering Plaintiff's home or looking into his back window on August 14, 2018. Plaintiff now argues that a new trial is warranted for four reasons. (Dkt. Nos. 231, 240).

#### 1. Plaintiff's Exhibit 11

Plaintiff first argues that the Court should grant a new trial because the Court ruled that both parties should refer to Defendant's Exhibit 1, and did not admit Plaintiff's separately numbered Exhibit P-11, which was the same document. (Dkt. No. 231, at 2). Plaintiff argues that the decision to refer to the exhibit in question as Defendant's Exhibit 1 was prejudicial because it confused the jury "as the Jury was led to believe the Exhibit was produced willingly by Defense, and for the Defendant rather than the truth that the Exhibit was produced only through a FRCP37 motion to compel." (*Id.*). Defendant responds that (1) Plaintiff raised his concern at trial and the Court subsequently instructed the jury that Plaintiff's Exhibit 11 and Defendant's Exhibit 1 were the same exhibit, (2) any confusion was the result of Plaintiff's continued references to the exhibit as Plaintiff's Exhibit 11, and (3) any prejudice as a result of how the exhibit was designated was "insignificant at best." (Dkt. No. 246-2, at 5–6).

3

The Court agrees with Defendant. The exhibit at issue consists of Defendant's CPS Investigation Progress Notes from August 2018. Prior to trial, the parties stipulated these notes into evidence as exhibit "D-1." (Dkt. No. 200, at 3). At trial Plaintiff sought to introduce the notes as his exhibit "P-11." The Court told Plaintiff that it would be confusing to the jury to refer to the same document with two different exhibit numbers. The Court further instructed the jury that both parties were introducing the exhibit at issue, but that, to avoid confusion, it would be referred to as exhibit "D-1." This is a simple instruction which is easy to follow, and "juries are presumed to follow their instructions." *United States v. Ferguson*, 676 F.3d 260, 292 (2d Cir. 2011 (citation omitted)). The Court further agrees with Defendant that any confusion resulting from how the parties referred to the exhibit was insignificant at most and that precluding Plaintiff from referring to the exhibit as "P-11" is not grounds for a new trial.[1]

### 2. Weight of the Evidence

Plaintiff argues that "no reasonable jury could have found in favor" of Defendant on the issue of whether Defendant violated Plaintiff's Fourth Amendment rights by searching the curtilage of his home. (Dkt. No. 231, at 2–3). Plaintiff argues that the verdict goes against the weight of the evidence, pointing to (1) Exhibit D-1, in which Defendant writes that she looked in "the window to the right of the door" and that the window had "some large white spots (possibly from moisture)," and (2) the testimony of his wife Emily Whipple, who testified that it was a window at the back of Plaintiff's residence that had moisture build up. (*See id.*). Defendant responds that the only evidence that she looked into a window at the back of Plaintiff's residence was the "speculative testimony" of Plaintiff's wife "that the back window was the only one that

---

[1] To the extent Plaintiff argues he should have been allowed to argue before the jury that Defendant improperly refused to disclose the notes during discovery, Plaintiff has failed to cite to any record support for that contention or the relevance of any such evidence. (*See* Dkt. No. 223, at 18–19 (noting that Magistrate Judge Stewart "found that Defendants properly complied with their discovery obligations") (citing Dkt. No. 148, at 9–10)).

4

had white spots." (Dkt. No. 246-2, at 6). Defendant notes that at trial she testified "very clearly that she did not look into the window in the back of the residence" but remained only "at the front door, on the front stoop" on the morning in question. (*Id.*). Defendant argues that the jury properly weighed the credibility of the witnesses. (*Id.*).

The Court agrees; the jury verdict was not against the weight of the evidence. Defendant testified that she remained at the front door, and did not look in the back window of Plaintiff's residence. Although Ms. Whipple testified that only the back window of the residence had moisture build up, Ms. Whipple also testified that the Defendant entered her residence without permission, and it is clear that the jury credited Defendant's version of events while discrediting Ms. Whipple's. "To grant the plaintiff's motion here would require a determination that the testimony of [Defendant] was not credible." *Smolen v. Menard*, No. 04-cv-1445, 2010 WL 2949135, at *3, 2010 U.S. Dist. LEXIS 73910, at *7–8 (N.D.N.Y. July 22, 2010). The Court declines to disturb the jury's evaluation of Defendant's and Ms. Whipple's credibility. *See Readle*, 670 F.3d at 418 (noting that "a judge should rarely disturb a jury's evaluation of a witness's credibility").

### 3. Due Process and Ineffective Assistance of Counsel

Plaintiff next argues that "there was a procedural due process" error when Plaintiff was testifying and "was not given the opportunity to confer with his stand-by counsel for the rebuttal portion of his testimony." (Dkt. No. 231, at 3). Plaintiff argues that the lack of opportunity to confer with stand-by counsel "frustrated" Plaintiff's efforts to make certain points during his re-direct examination. (*Id.* at 3–5). Defendant responds that (1) Plaintiff's stand-by counsel "went above and beyond" on Plaintiff's behalf, (2) Plaintiff was in fact given an opportunity to confer with stand-by counsel prior to his re-direct examination during a mid-morning break, and (3)

Plaintiff never objected "as to the pace or manner" of the re-direct examination. (Dkt. No. 246-2, at 7–8).

As an initial matter, "a litigant has no legal right to counsel in civil cases." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013). Plaintiff has therefore raised no plausible claim of a violation of his procedural due process rights or for ineffective assistance of counsel. Further, the Court initially appointed pro bono counsel to represent Plaintiff at trial, (Dkt. No. 182), but Plaintiff insisted on representing himself in this matter, (Dkt. No. 180). The first pro bono counsel the Court appointed to be stand by counsel sought to be relieved on January 20, 2022, stating that he and the Plaintiff "no longer have the ability to work with one another," (Dkt. No. 218), and the Court appointed a new pro bono stand by counsel shortly before trial "to assist plaintiff in the orderly presentation of his case," (Dkt. No. 225).

In any event, at no time during his re-direct examination did Plaintiff object or otherwise request an opportunity to confer with stand-by counsel about what questions he wanted asked, a request which the Court had previously indicated to Plaintiff would be granted. Because Plaintiff failed to object or otherwise raise the issue at trial, the Court finds that any lack of opportunity to confer with stand-by counsel does not warrant a new trial. *Cf. Hardy v. Saliva Diagnostic Sys., Inc.*, 52 F. Supp. 2d 333, 340 (D. Conn. 1999) ("[U]nless there is 'plain error,' failure to object to an issue during trial precludes review of that issue on a motion for a new trial." (citations omitted)).

### 4. June 27, 2018 Video

Finally, Plaintiff argues that a new trial is warranted because the Court "[d]isallow[ed]" a video exhibit capturing a June 27, 2018 interaction between Plaintiff, Ms. Whipple, Defendant, and another caseworker. (Dkt. No. 240, at 9–10). Plaintiff argues that the video was relevant to Defendant's "mens rea" and was essential to "add context." (*Id.*). Defendant responds that the

6

June 2018 video "bore absolutely no relevance to the sole claim at trial" and that Plaintiff introduced evidence showing that Defendant was aware that she did not have permission to enter Plaintiff's home prior to August 14, 2018. (Dkt. No. 246-2, at 8).

In its motions in limine decision, the Court "reserve[d] ruling until trial" on the admissibility of the video exhibit in question (Plaintiff's Exhibit 21). (Dkt. No. 223, at 15). At trial, however, Plaintiff did not lay a foundation and seek to introduce the video into evidence.[2] In any event, the Court finds that the fact that the video was never admitted into evidence does not warrant a new trial. Plaintiff argues that the video demonstrates why Plaintiff and his wife did not want Defendant to enter their home and shows that they revoked their consent for her to enter the residence. However, Plaintiff admitted evidence showing that Defendant was aware that she did not have permission to enter Plaintiff's home at the time of the alleged unlawful entry. The video was therefore not relevant to any issue beyond consent and not "essential" to Plaintiff's claim. Accordingly, the fact that the video was not admitted into evidence is not a ground for a new trial.

In sum, none of Plaintiff's arguments—whether taken singly or in combination—raises a possibility that the jury verdict in this case was "seriously erroneous" or a "miscarriage of justice." *Farrior*, 277 F.3d at 635. The Court therefore denies Plaintiff's motion for a new trial.

### III.    LEAVE TO FILE AN AMENDED COMPLAINT

The Court denies Plaintiff's request to vacate the judgment and for leave to file a third amended complaint. (*See* Dkt. Nos. 240, 242, 247). "A party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside" pursuant to Federal

---

[2] Towards the end of the trial, the Court expressly noted for Plaintiff which of his exhibits had been admitted into evidence. The Court stated that the remaining exhibits on Plaintiff's exhibit list were not admissible because they were either irrelevant to Plaintiff's Fourth Amendment claim or so minimally relevant that any probative value was substantially outweighed by the dangers of confusing the issues and misleading the jury.

Rule of Civil Procedure 59(e) or 60(b). *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation omitted). Because the Court denies Plaintiff's request for a new trial and the Court finds no cause to alter or amend the judgment, Plaintiff's request for leave to file an amended complaint is also denied.

## IV.    BILL OF COSTS

### A.    Applicable Standard

Federal Rule of Civil Procedure 54(d)(1) states in relevant part that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party."[3] "[T]he Supreme Court has held that the term 'costs' includes only the specific items enumerated in 28 U.S.C. § 1920." *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001), *abrogated on other grounds by Bruce v. Samuels*, 577 U.S. 82 (2016). Section 1920 provides that the following costs are taxable: (1) fees of the clerk and marshal; (2) fees for transcripts "necessarily obtained for use in the case"; (3) fees for printing and witnesses; (4) fees for exemplification and copying costs "where the copies are necessarily obtained for use in the case"; (5) docketing fees under 28 U.S.C. § 1923; and (6) fees for court-appointed experts and interpreters. 28 U.S.C. § 1920. "The burden is on the prevailing party to establish to the court's satisfaction that the taxation of costs is justified." *Cohen v. Bank of N.Y. Mellon Corp.*, No. 11-cv-456, 2014 WL 1652229, at *1, 2014 U.S. Dist. LEXIS 57829, at *2 (S.D.N.Y. Apr. 24, 2014) (quoting *John G. v. Bd. of Educ.*, 891 F. Supp. 122, 123 (S.D.N.Y. 1995)). "[B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception." *Whitfield*, 241 F.3d at 270.

---

[3] Plaintiff argues that Defendant's request for costs is "unnecessary" because "there is an indemnification policy within the County of Warren to cover [Defendant's] legal expenses." (Dkt. No. 236, at 2). Plaintiff does not provide any evidence to substantiate this assertion, which is immaterial in any event. The plain language of Rule 54(d)(1) allows the "prevailing party"—here, Defendant Sarah Raymond—to recover costs.

### B.     Discussion

Defendant seeks a total of $1,611.90 in costs associated with defending this action. (Dkt. No. 232). Plaintiff argues that Defendant's bill of costs should be denied because Plaintiff is proceeding in forma pauperis and "cannot afford the bill of cost at this time." (Dkt. No. 236, at 2). In the alternative, Plaintiff moves to stay Defendant's motion for costs pending the outcome of his appeal to the Second Circuit. (*Id.* at 2–3). Defendant argues that Plaintiff has not provided any evidence of his indigency and that, even if indigency were demonstrated, the Court should grant costs considering the circumstances of this case, citing to Plaintiff's "extensive motion practice over the course of the litigation." (Dkt. No. 243, at 2 (citing *Pierre v. City of New York*, No. 05-cv-5018, 2008 WL 1700441, at *4, 2008 U.S. Dist. LEXIS 29107, at *15 (E.D.N.Y. Apr. 9, 2008))).

#### 1.     Plaintiff's Indigency Objection

Plaintiff's primary objection to Defendant's motion for costs is that he is indigent and cannot afford to pay the bill of costs. (Dkt. No. 236, at 2). A court "may, in considering the equities of the case, deny costs due to factors such as financial hardship." *Campbell v. Empire Merchs., LLC*, No. 16-cv-5643, 2020 WL 587484, at *1, 2020 U.S. Dist. LEXIS 21742, at *2 (E.D.N.Y. Feb. 6, 2020) (citations omitted). Plaintiff, as the losing party, bears the burden of "showing that costs should not be imposed." *Id.* While a court may deny costs "on account of the losing party's indigency," indigency "*per se* does not automatically preclude an award of costs." *Id.* As a matter of discretion, a court may order the payment of costs by a party proceeding *in forma pauperis*. *See Feliciano v. Selsky*, 205 F.3d 568, 572 (2d Cir. 2000). The decision is "informed by any factor the court deems relevant, including the purpose of the *in forma pauperis* statute, the history of the party as litigator, good faith[,] and the actual dollars involved." *Id.* (internal quotation marks and citation omitted).

9

Here, Plaintiff states that he "has always proceeded and is currently in *forma pauperis*, is a full time college student, and is in a low income bracket." (Dkt. No. 236, at 2). Plaintiff also notes that he has "spent a large sum of his savings on going to Trial" and therefore "cannot afford the bill of cost[s] at this time." (*Id.*). Defendant responds that Plaintiff has provided "no documentary evidence for his claimed indigency beyond his own unsworn statement[s]." (Dkt. No. 243, at 2). The Court agrees with Defendant. Plaintiff has not submitted evidence showing that he lacks the resources to pay the modest bill of costs, and considering all of the factors in this case, the Court will not excuse Plaintiff from his obligation to pay costs. *See, e.g.*, *Hogan v. Novartis Pharms. Corp.*, 548 F. App'x 672, 674 (2d Cir. 2013) (summary order) (finding no abuse of discretion and affirming the imposition of costs where the plaintiff "presented no evidence to document her alleged lack of financial resources"); *Campbell*, 2020 WL 587484, at *1, 2020 U.S. Dist. LEXIS 21742, at *3 (imposing taxes where the plaintiff "provide[d] no documentary support for his claimed indigency").[4]

### 2. Postage Costs

Defendant seeks $48.65 in reimbursement for "Postage" costs that were incurred in mailing deposition transcripts to Plaintiff on three occasions. (Dkt. No. 232, at 1; Dkt. No. 232-1, at 1). However, these costs are miscellaneous postage costs unrelated to service, which do not fall into any of the categories of "taxable costs" enumerated in 28 U.S.C. § 1920. *See Byrne v. Telesector Res. Grp., Inc.*, No. 04-cv-76, 2010 WL 4340824, at *2, 2010 U.S. Dist. LEXIS 116730, at *4 (W.D.N.Y. Nov. 2, 2010) ("As for postage expenses, '[n]either section 1920 nor

---

[4] On April 1, 2022, Plaintiff filed a transcript request and "Letter Motion to Dismiss Rule 54 Motion" in which he argued that requiring Plaintiff to pay Defendant's bill of costs "would deny Plaintiff the possibility of affording the trial stenographic minutes" and thereby "deny his right to appeal the actual trial in a meaningful way." (Dkt. No. 248, at 1). The Court rejects this argument, as Plaintiff still has not provided any documentation of his inability to pay costs and, considering the factors set forth in *Feliciano*, the Court nonetheless exercises its discretion to impose costs on Plaintiff.

the rules thereunder permits a party to recover as a taxable cost any amounts expended for . . . postage unrelated to the cost of service." (collecting case law, and quoting *Langenberg v. Sofair*, No. 03-cv-8339, 2006 WL 3518197, at *9 2006 U.S. Dist. LEXIS 88157, at *26 (S.D.N.Y. Dec. 7, 2006))). Defendant's motion to tax these postage costs is denied.

The remaining costs Defendant seeks are fees for transcripts and docket fees, which are enumerated in Section 1923. *See* 28 U.S.C. § 1923(2), (5). Defendant is therefore awarded a total of $1,563.25 in costs, comprised of $1,533.25 for transcripts and $30.00 for docket fees.

### 3. Stay Pending Appeal

Plaintiff moves for a stay of Defendant's motion for costs "during the pendency of an Appeal" to the Second Circuit pursuant to Federal Rule of Civil Procedure 62. (Dkt. No. 236, at 2–3).[5] Plaintiff argues that it is "premature" to tax costs against him before the results of his appeal are known. (*Id.*). Defendant responds that Plaintiff has not made any argument as to the "merits of his appeal and/or likelihood of success." (Dkt. No. 243, at 2).

Under this Court's Guidelines for Bills of Costs, "[u]less otherwise ordered by the District Court, or the Circuit Court of Appeals pursuant to Fed.R.App.P. 8, the filing of an appeal shall not stay the taxation of costs. . . ." Local Guideline I.F.2. The Court notes that Rule 62, which governs stays of proceedings to enforce a judgment, does not appear applicable to a bill of costs. *See* Fed. R. Civ. P. 62. Nevertheless, "[w]hile Rule 62 outlines the mechanism for how a stay may be obtained while an appeal is pending, it does not limit the district court's inherent power to issue a stay in a manner that does not fall within the scope of the Rule." *Miller v. City of Ithaca*, No. 10-cv-597, 2017 WL 61947, at *4, 2017 U.S. Dist. LEXIS 1310, at *12 (N.D.N.Y.

---

[5] Plaintiff also cites to Federal Rule of Appellate Procedure 8(a), which does not govern this Court. *See* Fed. R. App. P. 1(a)(1) (noting that the Federal Rules of Appellate Procedure "govern procedure in the United States courts of appeals").

Jan. 5, 2017); *accord Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, No. 17-cv-1266, 2019 WL 181308, at *4, 2019 U.S. Dist. LEXIS 5416, at *10–11 (S.D.N.Y. Jan. 11, 2019) ("It is well-settled that a district court has discretionary power to stay proceedings pursuant to its inherent power to control its docket." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936))). Plaintiff, however, has failed to meet his burden of showing that a stay is warranted. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of th[e court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). In deciding whether to stay proceedings, courts consider four factors, the first two of which "are the most critical": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *accord In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

Here, Plaintiff has not made any showing of a likelihood of success on the merits or irreparable injury absent a stay. Having considered the applicable factors, the Court finds that Plaintiff has failed to meet his burden of showing that the circumstances here warrant a stay, and his motion for a stay of taxation of costs pending appeal is therefore denied.

## V.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motions for a new trial (Dkt. No. 231) and to file an amended complaint (Dkt. No. 240) are **DENIED**; and it is further

**ORDERED** that Defendant's motion for costs (Dkt. No. 232) is **GRANTED in part**, to the extent that Defendant is awarded $1,563.25 in costs, but is otherwise **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for a stay of Defendant's motion for costs pending appeal (Dkt. No. 236) is **DENIED**.

**IT IS SO ORDERED.**

Dated: <u>April 7, 2022</u>
Syracuse, New York

Brenda K. Sannes
U.S. District Judge